WESTERN UNION TELEGRAPH CO. *v.* SCHADE.

*(Nashville.* December Term, 1916.)

1. **COMMERCE.** Exclusive powers of congress. Interstate telegraph operation.

Congress having occupied the field with respect to interstate telegrams by Act Cong. June 18, 1910, chapter 309, 36 Stat. 539, amending Interstate Commerce Act Feb. 4, 1887, chapter 104, 24 Stat. 379, and making that act apply to telegraph companies engaged in sending messages from one State to another, State regulations and decisions no longer govern as to the validity of contractual limitations of liability. (*Post, pp.* 215, 216.)

Acts cited and construed: Acts 1910, ch. 309; Acts 1887, ch. 104.

Cases cited and approved: Leedy v. Western Union Tel. Co., 130 Tenn., 547; Western Union Tel. Co. v. Bilisoly, 116 Va., 562; Western Union Tel. Co. v. Simpson, 117 Ark., 156; Bailey v. Western Union Tel. Co., 97 Kan., 619; Western Union Tel. Co. v. Foster (Mass.), 113 N. E., 192; Williams v. Western Union Tel. Co., 203 Fed., 140; Gardner v. Western Union Tel. Co., 231 Fed., 405.

2. **TELEGRAPHS AND TELEPHONES.** Transmitting messages. Error. Limitation of liability.

In action against telegraph company for error in transmission of message, it was error to confine plaintiff's recovery to $50 and interest, where the telegram was written on a blank piece of paper and there was no showing of acceptance of the message under conditions that would incorporate, as part of the carrier's contract, the limitation clauses appearing in print on the back of the telegraph blanks in general use. (*Post, p.* 216.)

3. **COMMERCE.** Exclusive powers of congress. Interstate telegraph operation.

The liability of the comomn carrier of telegrams for mental suffering is, since Act Cong. June 18, 1910, controlled by the Fed-

eral law which supersedes State regulations and decisions *ad hoc·* (*Post, p.* 217.)

Cases cited and approved: Adams Exp. Co. v. Croninger, 226 U. S., 491; Western Union Tel. Co. v: Brown, 234 U. S., 542; Western Union Tel. Co. v. Compton, 114 Ark., 193; Western Union Tel. Co. v. Smith, 188 S. W., 702.

4. **TELEGRAPHS AND TELEPHONES.** Damages. Mental anguish.

Under the Federal law applicable to interstate telegraph service, damages for mental anguish only, claimed to be due to the carrier's default, are not recoverable. (*Post, pp.* 217, 218.)

Case cited and distinguished: So. Express Co. v. Byers, 240 U. S. 612.

5. **TELEGRAPHS AND TELEPHONES.** Damages. Mental anguish.

Under such Federal law, damages for mental suffering are allowable as an element of recovery where plaintiff has also sustained an injury to the person in connection therewith. (*Post, pp.* 218, 219.)

Cases cited and approved: Wilcox v. Richmond, etc., R. Co., 52 Fed., 264; Denver, etc., R. Co. v. Roller, 100 Fed., 738.

## FROM MAURY.

Appeal from the Circuit Court of Maury County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —J. H. TURNER, Judge.

CHAS. T. CATES, JR., and L. R. CAMPBELL, for plaintiff.

HOLDING & GARNER, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit brought to recover of the telegraph company for an error in the transmission of an interstate message. The plaintiff recovered a substantial judgment in the circuit court, where the case was tried before a jury.

On appeal by the company, the court of civil appeals made suggestion of a remittitur of the recovery down to $50, which the plaintiff declined to adopt with result that the judgment in her favor was reversed and the cause remanded to the circuit court for a new trial.

Both parties, being dissatisfied with rulings of the appellate court, have petitioned this court for relief.

Miss Schade, of age about twenty-three years, lived with her parents at Lawrenceburg, in this State. During the earlier part of the year 1913, she was at a school of voice culture in Cincinnati, Ohio. On March 22, 1913, she went to Middletown, Ohio, about thirty-five miles north of Cincinnati, to visit an aunt. On Monday, the 24th, violent rainstorms set in causing many cities and towns in Ohio to be inundated, and communication by railway, telegraph, and telephone to be interrupted. Middletown was in the flooded district. By Tuesday, the 25th, the water had flooded to a depth of five feet the home of the aunt where plaintiff was a guest, and the occupants were carried to the home of a Mrs. Gordon, who lived on

higher ground in the town. The latter was no rela-
tion of plaintiff, but was a sister of the aunt's hus-
band.

The water had receded on Thursday, March 27th,
and the aunt returned to her residence on Saturday
following. On Sunday morning Miss Schade went
to the depot hoping to get a train to the city, but
passenger traffic had not been resumed. She went
back to Mrs. Gordon's home and stayed there until
Monday, March 31st, when she returned to her aunt's
residence. Mrs. Gordon, to explain plaintiff's leav-
ing her house, was running low in supplies—was
about to a point of destitution.

Plaintiff's father at his home in Lawrenceburg
growing uneasy about his daughter, on Thursday,
27th, sent to a relative in Cincinnati a telegram word-
ed as follows:

"Christine is at 668 Curtis avenue, Middletown.
If it is possible to get her to Cincinnati before trains
run, do so. Have auto take provisions and wraps.
Send me expense account."

The street number appearing in the telegram was
the home of the aunt. In transmission a mistake
was made, and the message as delivered read, "608
Prentice avenue." On account of the condition of
the highways, the relative addressed could not make
the trip until Sunday morning, the 30th; and when
he arrived in Middletown that day he made search,
but could not find Miss Schade, or any such street,
and was forced to return without her.

Trains did not begin to run to Cincinnati before the end of the first week in April. On Monday, March 31st, another unusually heavy rainstorm set in, and on April 3d, yet another, though neither of the latter flooded the aunt's residence, but did add to the dampness experienced.

Miss Schade avers that, on account of the exposure in the aunt's home after she should have been found and taken on Sunday from her damp surroundings, she took a cold that developed into pleurisy and a throat trouble that interfered with her work of training for a vocalist.

The court of appeals held that the plaintiff's verdict was one warranted by the proof adduced, but for the fact that there was, as it conceived, a valid contractual limitation on the amount recoverable by her for a failure properly to transmit or deliver the telegram. That court said:

"We feel constrained to hold under the rules of the Federal courts, as we understand them, that the plaintiff below, the telegram sent in the case being an interstate message, cannot recover under the pleadings and evidence more than $50 and interest thereon from the institution of her suit."

The rule so referred to does exist since the passage of the Act of Congress of June 18, 1910 (36 U. S. Stat., 539), which amended the Interstate Commerce Act of 1887. By that act the provisions of the Act of 1887 were made to apply to telegraph companies engaged in sending messages from one State to

·another, which companies shall be "held to be common carriers within the meaning and purpose of this act." It is further provided that messages by telegraph subject to the provisions of the act may be classified into day, night, repeated, unrepeated, and such other classes as are reasonable, and that different rates may be charged for the different classes of messages; and, further, it is made the duty of such companies as common carriers to establish, observe, and enforce just and reasonable rates by way of tariffs.

It was stipulated on the trial of the case in the circuit court that the defendant company had filed its classification of telegrams and rates with the Interstate Commerce Commission.

It is now generally held, as the court of civil appeals states, that by this amendatory act Congress has occupied the field with respect to interstate telegrams. The result is to make applicable the rulings of the Federal courts in reference to the validity of contractual limitations, such as that of a $50 liability for such failure in relation to messages sent from one state to another. The question was raised by counsel and stated in the opinion in *Leedy* v. *Western Union Tel. Co.*, 130 Tenn., 547, 550, 172 S. W., 278; but a decision of the point was found not necessary in that case.

That such is the effect, and that State regulations and decisions no longer govern in that regard, is established by the decisions of several courts, State and

Federal. The first case so holding was *Western Union Tel. Co.* v. *Bilisoly,* 116 Va., 562, 82 S. E., 91, and later cases in accord are: *Western Union Tel. Co.* v. *Simpson,* 117 Ark., 156, 174 S. W., 232; *Bailey* v. *Western Union Tel. Co.,* 97 Kan., 619, 156 Pac., 716; *Western Union Tel. Co.* v. *Foster* (Mass.), 113 N. E. 192; *Williams* v. *Western Union Tel. Co.* (D. C.), 203 Fed., 140, 145; *Gardner* v. *Western Union Tel. Co.,* 231 Fed., 405, 145 C. C. A., 399.

However, it does not follow that the court of civil appeals reached a correct result in its judgment. The record contains no stipulation or proof touching the existence of any contract which undertakes to so limit liability. The telegram was written on a blank sheet of paper, and so accepted for transmission. There is nothing which shows that it was accepted under conditions that would incorporate as a part of the carrier's contract the limitation clauses that may appear in print on the back of the telegraph blanks in general use. We think it clear, therefore, that there was error committed in so confining the recovery to $50 and interest. The petition for *certiorari* filed by Christine Schade is granted, and relief awarded accordingly.

An assignment of error by the company is based on the refusal of the trial judge to charge the jury that:

"Damages on account of mental pain and anguish are not recoverable for a mistake made in the transmission of a telegram, where the message is an interstate one."

It is not to be doubted that, since the Congress by the passage of the amendatory act above referred to has entered the field and assumed the regulation of interstate telegraphic communication, the liability of the common carrier for mental suffering is also controlled by the Federal law (*Adams Exp. Co.* v. *Croninger,* 226 U. S., 491, 33 Sup. Ct., 148, 57 L. Ed., 314, 44 L. R. A. [N. S.], 257; *Western Union Tel. Co.* v. *Brown,* 234 U. S., 542, 34 Sup. Ct., 955, 58 L. Ed., (1457); which law supersedes State regulations and decisions *ad hoc* (*Western Union Tel. Co.* v. *Compton,* 114 Ark., 193, 169 S. W., 846; *Western Union Tel. Co.* v. *Smith* [Tex. Civ. App.], 188 S. W., 702; and the telegraph cases cited above).

The rights and liabilities of the parties depend, therefore, upon the terms of the contract entered into and the common-law principles accepted and enforced by the Federal courts.

One of these principles is that damages for mental anguish only, claimed to be due to the carrier's default, are not recoverable. In a very recent case it was said in reference to a request for an instruction to a trial jury to that effect:

"This instruction should have been given. The action is based upon a claim for mental suffering only —nothing else was set up, and the proof disclosed no other injury for which compensation had not been made. In such circumstances as those presented here, the long recognized common-law rule permitted no recovery; the decisions to this effect 'rest upon

the elementary principle that mere mental pain and anxiety are too vague for legal redress where no injury is done to person, property, health or reputation.' Cooley on Torts (3d Ed.), p. 94. The lower Federal courts, almost without exception, have adhered to this doctrine, and in so doing we think they were clearly right upon principle and also in accord with the great weight of authority." *Southern Express Co. v. Byers,* 240 U. S., 612, 36 Sup. Ct., 410, 60 L. Ed., 825.

In the case under consideration, the effort of plaintiff is not to recover for mere mental suffering; and no authority is cited to show that the Federal rule is more stringent than is stated in the above quotation, or that under it mental suffering is not allowable as an element of a recovery where the plaintiff, as here, has sustained an injury to her person in connection with which she underwent the mental suffering, if in fact any were allowed by the jury. The rule in such case is otherwise. *Wilcox v. Richmond, etc.. R. Co.,* 52 Fed., 264, 3 C. C. A., 73, 17 L. R. A., 804; *Denver, etc., R. Co. v. Roller,* 100 Fed., 738, 41 C. C. A., 22, 49 L. R. A., 77; 8 R. C. L., 513 *et seq.*

The trial judge properly charged the jury in this regard:

"If there was no injury sustained by her (plaintiff) in her person, property or health, then she could not recover damages for any mental pain and suffering."

Western Union Tel. Co. v. Schade.

Further, by no assignment of error of the company is it pointed out or complained of that there is incorporated in the verdict sum any damages not allowable as corporal damages; and we think that the record demonstrates that that amount was not in excess of a sum allowable for the purely physical injuries sustained by plaintiff.

The company under its petition for *certiorari* assigns other errors which are disposed of in the judgment to be entered in this court. Writ of *certiorari* thereunder is denied.

Affirm the judgment of circuit court, and modify the judgment of the court of civil appeals to that end.