## VAIGNEUR v. WESTERN UNION TELEGRAPH CO.

### No. 109.

District Court, E. D. Tennessee, N. D.

July 25, 1940.

W. O. Lowe and Fowler & Fowler, all of Knoxville, Tenn., for plaintiff.

Mitchell Long (of Cates, Smith & Long), of Knoxville, Tenn., for defendant.

TAYLOR, District Judge.

In this case, at the conclusion of the plaintiff's evidence, upon motion of defendant, the jury was directed to return a verdict for the defendant, the court being of opinion that the plaintiff's evidence failed to establish facts upon which, as matter of law, the defendant could be required to respond in damages.

The uncontroverted proof is that the telegram was sent from South Carolina to the addressee in care of the Knoxville News-Sentinel, a daily newspaper in Knoxville, Tennessee, which has many employees; that the message was delivered to the switchboard operator, a place or one of the places where messages are customarily delivered when addressed to persons in care of the paper. The switchboard operator undertook to deliver the message, and agreed to advise the defendant in case of non delivery. The proof further shows that messages such as here involved were covered by a rule of defendant as to handling method, and the plaintiff contends that there was a departure from that method in its handling.

The regulation or rule of the defendant introduced as an exhibit cannot serve as a measure of the conduct of the defendant to determine whether the conduct is negligent or otherwise. There was no evidence tending to show that the rule was in the interest of speedy and accurate delivery, or whether it related chiefly to the defendant's records as to the precise way in which messages of its type had been handled in case of later claim of negligent delivery.

The plaintiff claims no damages save mental anguish due to delay in reaching the bed side of his father before his death. There is no evidence of negligence, and the instruction complained of was, in my opinion, then and now correct.

Furthermore, it is my opinion, after consideration of many cases that the so-called Federal rule is controlling, and even if it be assumed that recovery may be had under the Tennessee rule for mental anguish unaccompanied by other injury, that such law or rule would have no controlling effect, as the Federal statute occupies the field, and the effect of the statutes (Act June 18, 1910, 36 Stat. 539; U.S.Code, Tit. 47, sec. 151 et seq., 47 U. S.C.A. § 151 et seq.) is to bring all interstate communications under their coverage to the exclusion of local statutes or decisions. Western Union Telegraph Co. v. Schade, 137 Tenn. 214, 192 S.W. 924; Southern Express Co. v. Byers, 240 U.S. 612, 36 S.Ct. 410, 60 L.Ed. 825, L.R.A. 1917A, 197.

The case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is discussed in plaintiff's brief as authority for the proposition that there is no Federal general common law, nor power in Congress to enact or declare substantive rules of common law, and that no such power exists in the Federal courts. It is argued that neither the Act of 1910, 36 Stat. 539, nor the Federal Communications Act, U.S. Code, Tit. 47, Sec. 151, 47 U.S.C.A. § 151, declares such rule or undertakes to enact any provision inconsistent with the application of the law of any State as to liability of common carriers of intelligence for mental anguish alone and suffered by the sendee of a message caused by the negligence of the carrier, either for delay or non delivery or for errors in text through faulty and negligent transmission. With this contention I cannot agree. To do so would be to defeat the purpose of absolute uniformity and equality in the matter of rates for the service performed. It cannot be soundly argued, in my opinion, that the rate would be equal and uniform between the carrier on the one side and A and B on the other if as to A in one locality there would be a liability for mental anguish unaccompanied by other injury, while as to B in another locality no such liability would exist, where the facts of the basic action grounded upon negligence were the same. The purpose of the applicable statutes was to set up a Federal system of uniformity of rates where interstate messages were involved, and uniformity of rates necessarily includes all of the attendant liabilities that may attach in connection with the services performed. If the liabilities are different in the several States, the rates for the same class of service would necessarily differ. This result would negative the legislative scheme. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Western Union Telegraph Co. v. Schade, 137 Tenn. 214, 192 S.W. 924.

Whether or not the Supreme Court of Tennessee in the Schade case,

supra, erroneously applied a non existent Federal common law principle, as contended by plaintiff's counsel, I agree with the conclusion reached, and must assume that the learned author of the opinion had in mind also the settled doctrine of construction required of courts to give effect to plain legislative intent if the words employed do not require another construction. Plainly the legislative intent was equality and uniformity. No other construction could attain that object, and none of the language of the enactments is strained by such construction. The Congress having entered the field with the plain purpose in view of remedying evils attendant upon discrimination and general lack of uniformity, it, in my opinion, undertook to occupy the whole field.

"What had previously been a matter of common-law liability, with such contractual restrictions as the states might permit, then became the subject of federal legislation to secure reasonable and just rates for all without undue preference or advantage to any". Western Union Telegraph Co. v. Priester, 276 U.S. 252, at page 259, 48 S.Ct. 234, at page 235, 72 L.Ed. 555.

■ Multiple authorities might be cited to support the conclusion reached, that no recovery can be had for mental anguish alone on any theory. It would be in the teeth of the Federal system. Compare Western Union Telegraph Co. v. Crovo, 220 U.S. 364, 31 S.Ct. 399, 402, 55 L.Ed. 498. There the Virginia statute merely declared a common law duty, and the Supreme Court held the statute valid as not constituting an unreasonable or any burden upon interstate commerce. The case was decided before the Act of 1910. In deciding the case, Mr. Justice Lurton said: "The requirement of the Virginia statute as here applied is a valid exercise of the power of the state, in the absence of legislation by Congress. It is neither a regulation of, nor a hindrance to, interstate commerce, but is in aid of that commerce". Western Union Telegraph Co. v. Crovo, supra. The above language would run counter to the law as here declared if the decision had followed the Act of 1910, but since it was before that Act, the sole question before the court was whether the Virginia statute as there applied constituted an unreasonable burden on or hindrance to interstate commerce. The question whether such an application of the Virginia statute would create a lack of uniformity was not before the court, as the statute of 1910 did not enter into a decision of the question.

The Crovo case is distinguished from the Pendleton case, Western Union Telegraph Co. v. Pendleton, 122 U.S. 347, 7 S.Ct. 1126, 30 L.Ed. 1187, for there the statute stricken down did by its terms impose a burden upon and constitute a hindrance to interstate commerce. See note 58 L.Ed. 1457.

There may be room for application of State statutes and constructions of the highest courts of the several States in cases of interstate messages involving different measures and bases of damages, but I can think of none which would not defeat the Federal scheme of uniformity of rate charge, and which necessarily requires uniformity as to liability.

I must on both failure to prove negligence and failure to allege and prove damages other than mental anguish adhere to the former action taken when the jury was peremptorily instructed, and deny the motion for new trial.