George L. **FRENKEL** and Evaw Frenkel

v.

The **WESTERN UNION TELEGRAPH COMPANY** and Western Union International, Inc.

Civ. No. 70-1254-M.

United States District Court,
D. Maryland.

June 8, 1971.

---

Joseph C. Roesser and Butler & Roesser, Wheaton, Md., for plaintiffs.

Joseph T. Brennan, 2d, Baltimore, Md., for defendant, The Western Union Telegraph Co.

Nelson Deckelbaum, Rockville, Md., for defendant, Western Union International, Inc.

JAMES R. MILLER, Jr., District Judge.

■ The plaintiffs, husband and wife, are citizens of the State of Maryland. The defendants, The Western Union Telegraph Company and Western Union International, Inc., are non-resident corporations doing business in the State of Maryland, being chartered by and existing under the laws of the States of New York and Delaware, respectively. The jurisdiction of this court is alleged in the complaint to be predicated on 28 U.S.C. § 1332 in that there is diversity of citizenship among the parties and the amount in controversy exceeds $10,000, exclusive of interest and costs.

The complaint alleges that on November 5, 1969, Mrs. Annelies Zietz, the sister of the plaintiff, Evaw Frenkel, caused a telegram, directed to the plaintiff and advising the plaintiff of the death of her mother, to be sent from the offices of the defendant, Western Union International, in Frankfort, Germany. Allegedly due to the negligence of both defendants, the telegram was never delivered.

On November 7, 1969, Mrs. Zietz caused to be dispatched a second telegram from the offices of the defendant, Western Union International, Inc., inquiring whether or not the plaintiff intended to attend her mother's funeral. This telegram was duly delivered to Evaw Frenkel but constituted the first notification that she received concerning the death of her mother. As a result of of the delay in receiving this information, the plaintiff, Evaw Frenkel, allegedly suffered extreme mental anguish and severe physical discomfort and was forced to make a precipitate departure to Germany which entailed the expenditure of certain sums of money which it would not have been necessary to spend had the first message been duly delivered. In count one, Evaw Frenkel seeks damages in the amount of $25,000 for personal injuries suffered by her as a result of the alleged negligence of the defendants. In count two she seeks $75,000 in damages for breach of warranty of contract. Finally, in count three Evaw Frenkel and her husband, George L. Frenkel, demand damages in the amount of $25,000 for loss of consortium.

The defendant, Western Union International, Inc. has filed the present motion to dismiss, claiming that this court lacks subject matter jurisdiction over the controversy involved herein. More specifically, the defendant contends that a rate tariff, Tariff F.C.C. No. 1 which was filed by the defendant, Western Union International, Inc. with the Federal Communications Commission, limits the liability of the carrier defendants for mistakes or delay in the transmission or delivery, or for nondelivery, of a message to the sum of $500. Therefore, the

defendant contends that the maximum sum of $500, and not the amount claimed by the plaintiffs, represents the amount in dispute, said sum being less than the federal jurisdictional minimum of $10,000 required by 28 U.S.C. § 1332 to confer jurisdiction upon the court over the subject matter of the suit.

The Act of June 18, 1910, Chap. 309, § 7, 36 Stat. 539, broadened the scope of the Interstate Commerce Act to include telegraph, telephone and cable companies engaged in sending messages from a state to any foreign country and any tariffs established by these carriers were therein made subject to the approval of the Interstate Commerce Commission. By § 1 of the Interstate Commerce Act it was provided that, subject to approval, messages received by telegraph companies for transmission could be classified into "repeated, unrepeated * * * and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages." The established rates for unrepeated messages thus became the lawful rates and any limitation upon liability included therein became the lawful condition upon which messages might be sent. Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S. Ct. 584, 65 L.Ed. 1094 (1920).

The court in *Esteve* specifically pointed out at page 572, 41 S.Ct. page 586, in regard to the limitations on liability contained in the tariffs, that

"[before the Act of 1910] the companies had a common-law liability from which they might or might not extricate themselves, according to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before, a matter of contract, by which a legal liability could be modified, but as a matter of law, by which a uniform liability was imposed."

The jurisdiction of the Interstate Commerce Commission over interstate and foreign communications was later transferred to the Federal Communications Commission by the Communications Act of 1934, 47 U.S.C. § 151, et seq. Section 203 of that Act presently provides for the filing of rates and tariffs by communication carriers with the Federal Communications Commission for its approval. On October 1, 1963, a regulation contained in Federal Communications Tariff No. 1, and setting out the conditions under which messages are accepted by international telegraph carriers became effective and binding upon the defendant, Western Union International, Inc. The tariff was concurred in by defendant, The Western Union Telegraph Company, by F.C.C. Concurrence No. 104, effective May 1, 1967. The tariff reads in pertinent part as follows:

"International Telegraph Service— Rules, Regulations and Rates for Inbound Traffic

"Conditions Under Which Messages Accepted

\* \* \* \* \* \*

"2. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

"3. In any event the Company shall not be liable for damages for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by the negligence of its servants or other-

wise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, * * *."

The telegram in question was admittedly sent at the "unrepeated message rate" and was not "specially valued." It appears to this court, and it is conceded by both counsel, that F.C.C. Tariff No. 1 is the controlling statutory provision in respect to the rate and classification of the telegram involved herein. The language of the tariff imposes an absolute limitation on the allowable recovery in this case. This limitation on recovery appeared as such to a legal certainty at the time of the filing of the complaint. Since there could not legally be a judgment for an amount equal to or greater than the requisite $10,000 jurisdictional amount under 28 U.S.C. § 1332, this court does not have jurisdiction over the matter under that section. Schaafs v. Western Union Telegraph Co., 215 F.Supp. 419 (E.D.Wis.1963); Martin v. Western Union Telegraph Co., 57 F.Supp. 521 (E.D.Wis.1944).

The matter, however, does not end here. A court is always free on its own motion to determine the existence or sufficiency of its jurisdiction over any matter before it. There are, in this case, several additional grounds upon which the jurisdiction of this court could possibly be founded.

Title 28 U.S.C. § 1331 which provides for federal jurisdiction over controversies involving a federal question also requires the existence of a controversy concerning a minimum jurisdictional amount of $10,000. Under the facts which appear in this case, 28 U.S.C. § 1331 is therefore subject to the same deficiency as is 28 U.S.C. § 1332 as a basis for the court's jurisdiction.

■ The plaintiff suggested in oral argument at the hearing on this motion that this court would have jurisdiction under 28 U.S.C. § 1337, which provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

No specific jurisdictional amount is required under this section. The meaning of the term "arising under" as contained in § 1337 has been considered by many courts and has been a subject of controversy among legal commentators. It is generally assumed that the phrase "arising under" in § 1337 is to be given the same breadth and limit as the synonymous phrase of § 1331 governing general federal question jurisdiction. 1 J. Moore, Federal Practice, § 0.60, [8.–3], at 627 (2d Ed.1954).

In considering whether federal jurisdiction under § 1337 is present, one must first look to the complaint itself, this being the basis from which jurisdiction must necessarily arise. It is important to note that the complaint in the present case makes no mention of any specific provision of a federal statute giving rise to the asserted cause of action. While the absence of a federal statutory reference is not, alone, decisive, as pointed out by Chief Judge Devitt in Eickhof Construction Company v. Great Northern Railway Co., 291 F. Supp. 44 (D.C.Minn.1968), "it is an orange signal to a federal district court to proceed with caution." Here, the complaint sounds in negligence and breach of contract and, as further pointed out in *Eickhof, supra,* such actions are not ordinarily "within the favor of federal question jurisdiction."

Although granting the genesis of the case to be in common law, it is the plaintiffs' contention that since the court must necessarily construe and apply a commercial tariff, the existence of which is required by federal statute, namely 47 U.S.C. § 203 (Federal Communications Act of 1934), the case "arises under" an act of Congress regulating commerce for purposes of § 1337. With this contention we can not agree. The mere fact that there exists somewhere within a controversy a question of federal law is not enough to satisfy the requirement in § 1337 that the case must *arise under* an act of Congress

regulating commerce. The action here is in no way predicated upon a federal statute but springs from federal common law of tort and contract. The federal statute concerned enters the controversy not to give rise to the cause of action, but to impose a limitation upon the recovery under the cause of action which exists independent of the statute. To say that the action "arises under" a federal statute, i.e., Title 47 U.S.C., is to expand federal question jurisdiction relating to matters of commerce far beyond the bounds prescribed by Congress in § 1337. Nor does the reasoning of the Second Circuit in Ivy Broadcasting Co. v. American Tel. and Tel. Co., 391 F.2d 486 (2 Cir., 1968), in finding federal jurisdiction under § 1331 of a matter involving federal common law, help the plaintiff. In *Ivy*, the matter in controversy did exceed $10,000 and the court held the words "* * * arises under the * * * laws * * * of the United States" in § 1331 included within their purview matters arising under federal common law as well as under federal statutory law. The language of § 1337, however, requires that the action arise under "* * * any Act of Congress regulating commerce" and therefore specifically requires a statutory foundation for the action as opposed to a common or case law foundation. Since the cause of action does not arise from a federal statute regulating commerce, no jurisdiction is conferred upon this court by 28 U.S.C. § 1337.

▮ The next question is whether there are any jurisdictional grants embodied in any other specific Congressional legislation. In this respect, the plaintiff contends that 47 U.S.C. § 207 provides this court with a jurisdictional basis upon which to proceed.

Section 207 provides as follows:

"§ 207. Recovery of damages

"Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier *may be liable under the provisions of this chapter*, in any district court of the United States of competent jurisdiction; but such persons shall not have the right to pursue both such remedies." (Emphasis added).

Assuming this to be a jurisdictional grant not requiring a minimum jurisdictional amount, the section itself does not set out the various rights for violation of which suit may be brought. The plaintiff contends that § 206 establishes the right of the plaintiff violated in the present case.

Section 206 states:

"§ 206. Carriers' liability for damages

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained *in consequence of any such violation of the provisions of this chapter*, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." (Emphasis added).

However, § 206 is subject to the same limitation as § 207, that being the necessity of establishing the violation of *another provision* of the chapter. Therefore, § 206 can not be relied on as the provision violated in invoking the jurisdiction of a federal court under § 207.

A case on point is that of Ivy Broadcasting Co. v. American Tel. and Tel. Co., *supra*. There the court, in discussing this matter, stated:

"The Communications Act, §§ 206, 207, provides that a suit may be brought in federal court for damages resulting from a common carrier's violation of specific provisions of the

Act, \* \* \*. In absence of such specific violations, the Act *does not expressly grant a remedy for negligence or breach of contract* in the rendition of communication service. Nor do we think that such a remedy should be 'inferred' from the Act; there is no reason to believe that Congress, in the Communications Act, intended to declare the existence of the fundamental right to recover for tort or breach of contract." At 489. (Emphasis added).

We conclude, therefore, that 47 U.S.C. § 207 does not confer jurisdiction on the district court.

Having found that there exists no basis upon which the jurisdiction of this court can be predicated, defendant's motion to dismiss the Complaint is hereby granted.

It is therefore Ordered this 8th day of June, 1971, that the Complaint in the above case be, and the same is, hereby dismissed as to both defendants.