**NORTH AMERICAN PHILLIPS CORPORATION, Plaintiff-Appellant,**

v.

**EMERY AIR FREIGHT CORPORATION, Defendant-Appellee.**

**No. 385, Docket 77–7379.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1977.

Decided July 17, 1978.

C. Raymond Nelson, New York City, Rein, Mound & Cotton, New York City, for plaintiff-appellant.

John V. McAuliffe, New York City, Bigham, Englar, Jones & Houston, New York City, for defendant-appellee.

Before OAKES, VAN GRAAFEILAND, Circuit Judges, and BARTELS,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

In 1971, North American Phillips (Norelco) retained Emery Air Freight[1] to ship 1250 cartons of electric razors from a warehouse in Nevada to Norelco's Long Island plant. Because Emery had no facilities or personnel in Nevada, it used Parcel Delivery Service of Reno, Nevada, as its agent. On November 3, 1971, a Service representative went to the warehouse to check and label the cargo. He received and signed a document entitled "Straight Bill of Lading—Short Form" but apparently did not deliver an airway bill as required by 14 C.F.R. § 296.73. Subsequently, the razors were transported to San Francisco by truck and then to New York City by air. On arrival, the cargo was loaded onto two trucks for delivery to Norelco. One of the trucks, carrying 795 cartons of razors, was hijacked en route, and the cargo was stolen.

On December 7, 1971, Norelco submitted a written claim to Emery for $114,003.00, the value of the lost cargo. On December 21, 1971, Emery informed Norelco that the claim was governed by the provisions of Emery's tariff, which limited its liability for negligence to $.50 per pound in the absence of a higher declared value. Because Norelco had not declared a higher value at the time of shipment, Emery tendered a check for $10,527.50, its maximum liability under the tariff. Norelco held the check for over a year, returning it on December 28, 1972, and reasserting its claim for the full $114,003.00. Thereafter, it filed suit in the Supreme Court of the State of New York. Emery removed the action to the United States District Court for the Southern District of New York on the ground that plaintiff's claim arose under federal law. 28 U.S.C. § 1441(b).

In the district court, Emery raised three defenses to Norelco's claim. It asserted that under its tariff all suits against it had to be instituted within one year of the disallowance of a claim and that plaintiff's suit was not timely. It also contended that the tariff relieved it of liability for losses not due to its negligence and that it had not been negligent. Lastly, it argued that, even if negligent, its liability was limited to $.50 per pound. Norelco countered that the tariff was inapplicable because no airwaybill was delivered at the time of shipping, and that therefore the common law, not the tariff, governed Emery's liability.

After considering the pleadings, pre-trial depositions, and stipulated facts, the district judge ruled in defendant's favor, holding that delivery of an airwaybill was not a

---

\* Hon. John R. Bartels, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. Emery is an air freight forwarder, certified by the CAB and operating under tariffs filed with the CAB pursuant to the Federal Aviation Act, 49 U.S.C. §§ 1301 *et seq.*

prerequisite to the application of the tariff. The district judge decided that Emery was not negligent and could avail itself of the exculpatory provision in the tariff. He also found that the action was not begun within the one-year period and therefore was time barred. His opinion is reported at 432 F.Supp. 519.

Appellant and appellee are Delaware corporations doing business in the State of New York, and there was no diversity of citizenship justifying removal of appellant's action to federal court under 28 U.S.C. § 1441(a). Appellee proceeded therefore under § 1441(b), which authorizes removal where the plaintiff's claim is one over which the federal courts would have original jurisdiction because the claim arises under the laws of the United States.[2] In recent years, several courts have held that claims similar to appellant's did not arise under the laws or statutes of the United States. *See, e. g., Security Insurance Co. v. National Airlines, Inc.,* 413 F.Supp. 493 (E.D.La.1976); *Frenkel v. Western Union Telegraph Co.,* 327 F.Supp. 954 (D.Md.1971); *cf. Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). For this reason, we raised the question, *sua sponte,* whether original federal jurisdiction existed in the district court to pass upon appellant's claim and requested the parties to brief this issue.[3] We now hold that the district court did have jurisdiction.

Section 403(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1373(b)(1), contains language which is similar to that of the Interstate Commerce Act, 49 U.S.C. §§ 2, 3, 6(7), 906(c), the Federal Communications Act, 47 U.S.C. § 202(a), and the Motor Carrier Act, 49 U.S.C. § 317(b).[4] The purpose of these provisions was to establish a uniformity and equality of rates in all interstate transactions to which the several statutes applied. *Western Union Telegraph Co. v. Esteve Brothers & Co.,* 256 U.S. 566, 572, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); *New York, New Haven & Hartford Railroad v. ICC,* 200 U.S. 361, 391–92, 26 S.Ct. 272, 50 L.Ed. 515 (1906); *United States v. Associated Air Transport, Inc.,* 275 F.2d 827, 832–34 (5th Cir. 1960); *Lichten v. Eastern Airlines, Inc.,* 189 F.2d 939, 941 (2d Cir. 1951).

Limitations of liability and cargo valuations are inherent parts of the rates, and the statutory mandate of uniformity must therefore apply to the liabilities which attend the carriage of goods. *Western Union Telegraph Co. v. Esteve Brothers & Co., supra,* 256 U.S. at 571–73, 41 S.Ct. 584; *Kansas City Southern Railway v. Carl,* 227 U.S. 639, 653, 33 S.Ct. 391, 57 L.Ed. 683 (1913). If a shipper in one state could hold a carrier to a higher standard or degree of liability than a shipper in another state who has paid the same rate, the first shipper would be getting a preference not granted to the second.[5] *Vaigneur v. Western Union*

**2.** 28 U.S.C. § 1337 provides that the district courts shall have original jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce," and 28 U.S.C. § 1331 provides for such original jurisdiction where the matter in controversy exceeds $10,000 and "arises under . . . laws . . . of the United States."

**3.** This Court, of course, may raise the question of jurisdiction on its own motion. *John Birch Society v. NBC,* 377 F.2d 194, 199 (2d Cir. 1967); *see* 28 U.S.C. § 1447(c).

**4.** Section 1373(b)(1) provides in part as follows:

No air carrier or foreign air carrier or any ticket agent shall charge or demand or collect or receive a greater or less or different compensation for air transportation, or for any service in connection therewith, than the rates, fares, and charges specified in then currently effective tariffs of such air carrier or foreign air carrier; and no air carrier or foreign air carrier or ticket agent shall, in any manner or by any device, directly or indirectly, or through any agent or broker, or otherwise, refund or remit any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities, with respect to matters required by the Board to be specified in such tariffs except those specified therein.

**5.** In such a case, "an irreconcilable conflict between the statutory scheme and the persistence of common-law remedies" would exist, *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 299, 96 S.Ct. 1978, 1984, 48 L.Ed.2d 643 (1976), requiring the preemption of state law in spite of the savings provision of 49 U.S.C. § 1506.

*Telegraph Co.,* 34 F.Supp. 92, 93 (E.D.Tenn. 1940). This, the various commerce acts prohibit. *Western Union Telegraph Co. v. Esteve Brothers & Co., supra,* 256 U.S. at 571, 41 S.Ct. 584.

██ Although the liability of air carriers is not created by statute, as is the case with surface carriers, *see* 49 U.S.C. § 20(11), the prohibition against unlawful preferences is equally strong with regard to the former as the latter. *Twentieth Century Delivery Service, Inc. v. St. Paul Fire and Marine Insurance Co.,* 242 F.2d 292, 299 (9th Cir. 1957). For example, 49 U.S.C. § 1472(d) makes it unlawful to give or receive rebates or commissions in shipments by air.[6] It follows that both the rights and liabilities as between an airline and a shipper are determined by the shipper's valid tariffs. *Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1403 (2d Cir. 1969). In some cases, this conclusion is reached by treating the tariff rate as a matter of law instead of contract. *See Western Union Telegraph Co. v. Esteve Brothers & Co., supra,* 256 U.S. at 572, 41 S.Ct. 584; *Carter v. AT&T,* 365 F.2d 486, 496 (5th Cir. 1966), *cert. denied,* 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); *United States v. Associated Air Transport, Inc., supra,* 275 F.2d at 833; *American Railway Express Co. v. American Trust Co.,* 47 F.2d 16, 18 (7th Cir. 1931); *Blair v. Delta Air Lines, Inc.,* 344 F.Supp. 360, 365 (S.D.Fla.1972), *aff'd on opinion below,* 477 F.2d 564 (5th Cir. 1973); *Slick Airways, Inc. v. United States,* 292 F.2d 515, 519 (Ct.Cl.1961). In other cases, it is said that the tariff becomes part of the contract between the parties. *Tishman &*

*Lipp, Inc. v. Delta Air Lines, supra,* 413 F.2d at 1405; *Lichten v. Eastern Air Lines, Inc., supra,* 189 F.2d at 940; *Mao v. Eastern Air Lines, Inc.,* 310 F.Supp. 844, 846 (S.D.N. Y.1970); *Rosch v. United Air Lines,* 146 F.Supp. 266, 267 (S.D.N.Y.1956); *Mack v. Eastern Air Lines,* 87 F.Supp. 113, 115 (D.Mass.1949). Regardless of the rationale, it is clear that a carrier's valid federal tariffs which are applicable to the shipment at issue govern not only the nature and extent of its liability, but also the nature and extent of the shipper's right of recovery. It is in this light that we must examine the question of federal jurisdiction.

██ Whether a suit arises under a law of the United States must be determined from plaintiff's complaint, not defendant's answer. *Peyton v. Railway Express Agency, Inc.,* 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942). The court must ascertain from the complaint whether federal law is a pivotal issue in the case, one that is basic in the determination of the conflict between the parties. *Gully v. First National Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Ivy Broadcasting Co. v. AT&T,* 391 F.2d 486, 489 (2d Cir. 1968). However, the lack of any reference to federal law in the complaint is not controlling. *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.,* 270 F.Supp. 264, 267 (E.D.N.Y.1967); 1A *Moore's Federal Practice* ¶ 0.160 at 185–87 (2d ed. 1974). Congress has created a broad, comprehensive scheme covering the interstate shipment of freight, aimed at preventing preferential treatment among shippers and es-

---

**6.** 49 U.S.C. § 1472(d) provides:

(1) Any air carrier, foreign air carrier, or ticket agent, or any officer, agent, employee, or representative thereof, who shall, knowingly and willfully, offer, grant, or give, or cause to be offered, granted, or given, any rebate or other concession in violation of the provisions of this chapter, or who, by any device or means, shall, knowingly, and willfully assist, or shall willingly suffer or permit, any person to obtain transportation or services subject to this chapter at less than the rates, fares, or charges lawfully in effect, shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be subject for

each offense to a fine of not less than $100 and not more than $5,000.

(2) Any person who, in any manner or by any device, knowingly and willfully solicits, accepts, or receives a refund or remittance of any portion of the rates, fares, or charges lawfully in effect for the air transportation of property, or for any service in connection therewith, or knowingly solicits, accepts, or receives any privilege, favor, or facility, with respect to matters required by the Board to be specified in currently effective tariffs applicable to the air transportation of property, shall be fined not less than $100, nor more than $5,000, for each offense.

tablishing national equality of rates and services. This has occupied the field to the exclusion of state law. *Illinois Produce International, Inc. v. Reliance Insurance Co.,* 388 F.Supp. 29, 35 (N.D.Ill.1975); *Milhizer v. Riddle Airlines, Inc.,* 185 F.Supp. 110, 112 (E.D.Mich.1960), *aff'd,* 289 F.2d 933 (6th Cir. 1961); *cf. Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709, 712 (2d Cir.), *cert. denied,* 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962). *But see Litvak Meat Co. v. Baker,* 446 F.2d 329, 334–37 (10th Cir. 1971). The allegations of appellant's complaint show that its claim is based upon the loss of goods during interstate transportation by appellee as a common carrier for hire. From the substance of these allegations, it is clear that the complaint sets forth a claim arising under federal law. *Blair v. Delta Air Lines, Inc., supra,* 344 F.Supp. at 365.

■ Having determined that the district court had jurisdiction, we have no problem in affirming its decision on the merits. Moreover, we need add little to what the district judge has already said in his scholarly opinion. Although appellee failed to furnish an airwaybill to appellant as required by 14 C.F.R. § 296.73(a), the bill of lading governing the shipment specifically provided that the goods were received "subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading." These tariffs provided in part that appellee would not be liable for losses not caused by its own negligence, and in no event unless action was brought within one year after written disallowance of a claim for loss. Judge Gagliardi held that these provisions were controlling, that appellee was not negligent, and that the action was not timely. We see no error here. *Tishman & Lipp, Inc. v. Delta Air Lines, supra,* 413 F.2d at 1403–06; *Lichten v. Eastern Airlines, Inc., supra,* 189 F.2d at 941; *see also Molitch v. Irish International Airlines,* 436 F.2d 42, 44 (2d Cir. 1970) (Warsaw Convention).

■ Appellant's reliance on *Klicker v. Northwest Airlines, Inc.,* 563 F.2d 1310 (9th Cir. 1977), is misplaced. In that case, the concededly negligent carrier attempted to rely upon a tariff provision which completely exonerated it from liability and which had been declared unlawful by the CAB subsequent to the loss. Alternatively, the carrier attempted to rely upon a "released valuation" for the valuable animal which had been shipped, although it had refused to give the shipper an opportunity to declare the animal's true value. In the present case, appellee was not negligent. Accordingly, the basis of *Klicker*—the common law rule forbidding a carrier to exculpate itself from liability for its negligence—is not applicable.

Reading between the lines, we get the impression that the court in *Klicker* does not agree with this Court's holdings concerning the CAB's role in supervising tariffs and services. However, because of the critical factual differences between the two cases discussed above, and because of the enactment of the air cargo "deregulation" bill on November 9, 1977, Pub.L.No.95–163, § 18(a)–(e), 91 Stat. 1286–88 (to be codified in 49 U.S.C. § 1482(d), (g)–(i), (k)), we see no point in discussing the disagreement between the Circuits. In the deregulation bill, Congress has taken away the CAB's authority to suspend "unjust or unreasonable" cargo rates and to prescribe rates and rules in their place. *See* 49 U.S.C.A. § 1482(d)(3) (Supp.1978). What effect this regulation will have on the powers of the CAB and, in turn, the courts must await future legislative or judicial clarification.[7] Our holding herein does not address this question.

The judgment appealed from is affirmed.

OAKES, Circuit Judge (concurring):

While I agree with Judge Van Graafeiland's scholarly exposition of the jurisdictional issue, I concur in the judgment for reasons different from those stated in his opinion. CAB regulations quite specifically

---

7. The CAB is currently considering the effect of Pub.L.No.95–163 in a proceeding entitled "Liability And Claim Rules And Practices Investigation," Dkt.No.19923.

require an air freight forwarder to prepare and deliver to consignor and consignee an "accurate" airwaybill which contains both a limitation of liability statement and a declared value of the shipment with charges for excess valuation. Only because the documentation provided was the functional equivalent of what the CAB ordinarily requires can the air freight forwarder take advantage of the tariff limitations on liability and time within which to bring suit.

The relevant regulation is quite explicit.[1] In addition to delivery, it requires that the airwaybill be "accurate," that a bill be prepared "for each shipment" and that it set forth a considerable amount of information including a "limitation of liability statement," the "[d]eclared value of shipment," and charges for "[e]xcess valuation." 29

C.F.R. § 296.73(a)(1)(ii), (vii), (2)(iv) (1977). The regulation further specifies that

[w]here a forwarder desires to conduct an operation which entails the use of documentation different from that required herein, it is the responsibility of such forwarder to secure from the Board, in advance, permission to deviate from the requirements of this section.[2]

Plainly this regulation which is concededly binding has a purpose. At a minimum, it seeks to ensure that the shipper is aware of any limitations on liability. It further entitles him to declare an excess value and to pay any charges thereby incurred in order to avoid the tariff's limitations, here fifty cents a pound.[3] And surely the requirement that a copy of the bill be delivered to consignor and consignee[4] is not surplusage.

---

1. The regulation provides:

   Each holder of an operating authorization shall prepare an accurate airwaybill for each shipment consigned for transportation to a direct air carrier by such holder in the capacity of an air freight forwarder or international air freight forwarder and a copy thereof shall be supplied to the consignor and to the consignee of each such shipment. Each such airwaybill shall contain:
   (1) The following information:
   (i) Name and address of consignor, consignee, and forwarder.
   (ii) A limitation of liability statement.
   (iii) Number of packages in shipment.
   (iv) Total weight (both actual and dimensional, where applicable).
   (v) Description of commodities.
   (vi) Point of origin and destination of shipment.
   (vii) Declared value of shipment.
   (viii) Date of airwaybill preparation.
   (ix) Name of employee or agent preparing airwaybill.
   (2) The following charges, when applicable:
   (i) Commodity rate applied.
   (ii) Total weight-rate charge.
   (iii) Pickup and/or delivery.
   (iv) Excess valuation.
   (v) Charges advanced.
   (vi) Assembly or distribution.
   (vii) Other accessorial charges (specify).
   (viii) Insurance (liability).
   (ix) C.O.D. fee.
   (x) Preparation of export documents (international air freight forwarders only).
   (xi) Total charges and an indication as to whether charges are prepaid or collect.
   29 C.F.R. § 296.73(a) (1977).

2. *Id.* § 296.73 (Note). Appellee argues, Brief for Appellee at 14–15, that the CAB impliedly gave such permission in advance by accepting Emery's Tariff Rule 45A which provides that, irrespective of form, nonnegotiable shipping documents presented in lieu of Forwarder Airbills "shall be subject to the Forwarder's Tariff in effect on the day of acceptance." But acceptance of the tariff, though it might have independent effect, *Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1405 (2d Cir. 1969), cannot displace the requirements of the regulation. Tariff Rule 45A, however, arguably falls within the dispensation from the regulation's strictures accorded by the Note appended to § 296.73; the Note refers to a forwarder desiring "to conduct an operation." While we need not decide whether the activity at issue here constituted an operation it is by no means clear whether the term "operation" is bureaucratese for a single transaction or contemplates a continuing course of business. The regulation could well be amended to advantage.

3. The regulation requires that the choice given to the shipper (or passenger) to obtain either full or limited liability must be made explicit, absent which the limitations in the filed tariffs are not available. The element of choice is critical. *Conklin v. Canadian-Colonial Airways, Inc.,* 266 N.Y. 244, 248, 194 N.E. 692, 694 (1935); *American Machine & Foundry Co. v. Santini Bros., Inc.,* 54 Misc.2d 886, 889, 283 N.Y.S.2d 574, 577 (Sup.Ct.1967), *aff'd,* 46 A.D.2d 844, 362 N.Y.S.2d 402 (1st Dep't 1974).

4. Here of course a copy of the bill could not have been furnished to the consignee since the underlying goods were stolen. This is not a fatal defect, however, since the basic dispute

A delivered bill is the contract of carriage and binding. *See generally United States v. Louisville & Nashville Railway Co.,* 221 F.2d 698, 701–02 (6th Cir. 1955).

The court below and the panel majority rely on *Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709, 712 (2d Cir.), *cert. denied,* 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962), and *Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1403–04 (2d Cir. 1969), for the proposition that air tariff limitations govern whether or not the documentation incorporates them. This may be true in a case where no regulations govern the subject,[5] but it is quite different from saying that a bill that is undelivered or is prepared contrary to CAB regulations will serve to invoke the tariff provisions. To hold otherwise is to render the regulation nugatory, a result we are without power to effectuate.

The overland bill prepared here did, as Judge Van Graafeiland points out, state that it was "subject to the classifications and tariffs in effect on the date of the issue of this Bill." Moreover, the overland bill contained a space for the shipper to make the filed tariffs inapplicable to him by declaring the value of the merchandise and by paying a special charge. The net effect then of the provisions in the overland bill,[6] construing them generously, is to put the freight forwarder in substantial compliance

here relates to the contract between the consignor and the air freight forwarder.

**5.** The opinion for the court in *Vogelsang* refers to *Boston & Maine R. R. v. Hooker,* 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914), for this proposition. There the Court held a common carrier's baggage limitation provisions valid and applicable though the passenger was not aware of them. But, and it is an important qualification, the Interstate Commerce Commission itself considered that the tariff filing was sufficient and that no other notice was required. The Court relied on the ICC's position. *See id.* at 118–21, 34 S.Ct. 526. Here the CAB required otherwise; its regulation specifies the form of notice which must be furnished to the shipper. None of the cases referred to involves a regulation with such requirements.

**6.** The stipulated facts indicate that a copy of the overland bill of lading was delivered to

with the regulation. On this basis, but only on this basis, I concur in the judgment.

appellant's authorized agent, Pacific Freeport Warehouse Company:

13. That later in the morning of November 3, 1971, Mr. Tosolini appeared at Pacific Freeport's warehouse shipping office, checked and labeled plaintiff's cargo, received the aforementioned Straight Bill of Lading and, after signing and dating said document at the bottom, returned same to a representative of Pacific Freeport Warehouse, retaining one copy thereof for his own purposes.

14. That there is an issue of fact to be submitted to this Court for determination as to whether or not Mr. Tosolini, at the same time and place, also prepared and delivered to Pacific Freeport Warehouse a document known as Emery Air Freight Corp. Airbill RNO–68927.

For purposes of this appeal, we must assume that an airwaybill was not delivered.