**I.L.T.A., INC., Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**No. CIV-80-278T.**

United States District Court,
W.D. New York.

Jan. 6, 1983.

Lines, Wilkens, Osborn & Beck, Rochester, N.Y., for plaintiff.

David L. Hoffberg (of counsel), Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., and Paul M. Tschirhart (admitted pro hac vice), Chicago, Ill., for defendant.

## MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

Plaintiff, ILTA moves this Court for partial summary judgment as to liability on the first, third and fourth counts of the complaint. The defendant has cross-moved for partial summary judgment on the first, second, third and fourth causes of action in the complaint.

The parties entered into a contract which called for a series of 64 jet charter flights to be supplied by United (they would provide the planes and crew), and paid for by ILTA (they would provide the passengers), during the year of 1979. Under the original contract, ILTA was to provide United with payment for each flight seven (7) days in advance of the flight. The basic contract was entered into in August of 1978, with various amendments the last of which was made on January 4, 1979.

On January 23, 1979, United notified ILTA by letter that it had filed with the Civil Aeronautics Board a petition to "amend its charter tariff to require payment in full for each charter eleven (11) days prior to departure versus seven (7) days currently in effect. All other facets of the payment schedule remain unchanged". United Airlines letter to James Vreeland, President of ILTA of January 23, 1979. On the same day, United did in fact file its petition to change the tariff relating to the time of payment. United's explanation for seeking this change was:

The Public Charter regulation passed last August states in part that a tour operator may not cancel a charter tour less than ten (10) days prior to departure for any reason including insufficient participation. That provision conflicts with United's tariff which requires cancellation of a charter flight if full payment is not received seven (7) days prior to departure.

The CAB granted United permission to change its tariff on January 29, 1979, and United filed the new tariff on February 14, 1979. By its January 23rd letter to ILTA, United informed them that on flights departing on or after March 1, the payment had to be received eleven (11) days in advance. This notice of United's intention was apparently premature, but not of any effect since by March 1, 1979, the tariff had been filed and was in effect.

On February 12, 1979, ILTA sent a letter to United stating that they would "be happy to either continue paying seven (7) days prior to departure as stated in our current agreement or alternatively to renegotiate our charter contracts with United Airlines for the balance of 1979". In short, ILTA told United that it would not follow the new eleven (11) day payment schedule.

ILTA then proceeded to do just that with the following results. Eleven (11) days prior to the scheduled departure of a charter flight, United would notify ILTA that the flight was cancelled because United had not received payment. On the seventh (7th) day before the flight, ILTA would remit the payment due and United would then reinstate the flight. This occurred on three (3) occasions. Finally, on March 14, 1979, United wrote to the plaintiff and informed them that the fact that the trips were reinstated did not operate as an acceptance "of your practice of paying less than eleven (11) days before departure". United continued, saying:

We are hopeful that this matter can be resolved amicably and that we will be able to anticipate receipt of your charter payments on or before the 11th day prior to departure as now required by our tariff. We certainly do not wish to cancel charter flights. However, our tariff was amended in order to provide us with that option in order to protect against non-payment. Of course, the CAB will have the opportunity to rule on your protest of

our rule. In the meantime, however, we expect compliance with the tariff rule. (United's letter of March 14.)

ILTA's response to this letter came on March 26, 1979. The key language of that letter was as follows:

> Be advised that effective with the planned departure of charter flight # 5490 on May 7, 1979, and every subsequent flight scheduled for the remainder of 1979, International Leisure Time, Inc. will not remit payment nor be held liable for any penalties subsequently alleged by United Airlines. This action is taken consistent with the fact we do not have a contract currently in effect and the previous one has *been deemed NULL and VOID* by United's actions.

(ILTA's letter of March 26.) (emphasis added)

United notified ILTA by letter of April 2, 1979, that they viewed the letter of March 26, as formal notification of cancellation for the rest of the charter flights. United then moved to collect cancellation damages as were established in the original contract and did in fact collect $48,625.91 plus interest. This money was taken from an assignment of a $200,000.00 certificate of deposit which the original contract had required ILTA to post as security.

It is important to consider the effect of United's application to CAB for the new tariff and the subsequent challenges to that application by ILTA.

United applied to the CAB on January 22, 1979, for a tariff change to take effect on March 1, 1979. United sought this change pursuant to what is called "short notice"; (United sought and obtained specific tariff permission to file the tariff amendment on less than sixty (60) days statutory notice). This request for shortened time was approved by the CAB's staff and the tariff itself was also approved.

On March 5, 1979, ILTA filed a petition for review of the grant of the tariff amendment. On April 19, 1979, the Board affirmed the staff's granting of the tariff (all members of the Board concurring). On March 29, 1979, ILTA also filed a petition for declaratory order which was also denied by CAB (this was denied in the Board's decision of April 19).

On April 26, 1979, ILTA petitioned the United States Court of Appeals for the District of Columbia for a review of the CAB order. Subsequently, on November 5, 1979, CAB asked the Court of Appeals to remand the challenged order to it for further consideration. The Court granted that motion on January 28, 1980, allowing the CAB sixty (60) days in which to act. On March 14, 1980, CAB issued a decision tentatively concluding that its earlier affirmance of staff action was incorrect, that the tariff should not be allowed to stand, and invited comments on its tentative action. On March 28, 1980, CAB issued an order which held that the original action of its staff in allowing United's amended tariff was incorrect. CAB expressly did:

> not attempt in any way to rule upon the effect, if any, which our present disavowal of our past action may have upon the mutual rights and liabilities of United and ILTA arising from their respective performances on contractual obligations claimed by United—in reliance on its tariff subsequently filed with our staff's erroneous permission—to have been superseded by a conflicting tariff rule that was then in effect.

(CAB order 80-3-190.)

The final factual point necessary of consideration is the contractual language relating to tariffs and its effect on the relationship of the parties. Paragraph IIIA. of the Conditions of Contract, provides:

> Tariffs (including future modifications thereof) of United are hereby incorporated by reference and shall govern the rights and liabilities of the parties hereto with respect to the charter flight(s) regardless of the provisions of this Chapter Agreement or the Operator's receipt of notice of a change in the tariffs ....

## DISCUSSION

Essentially, plaintiff ILTA's position is that United committed an anticipatory

breach of the contract by its attempt to "unilaterally change the agreed payment schedule portion of the contract...." (Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment, pg. 12). Plaintiff also contends that because the tariff amendment sought by United was ultimately found to be invalid, it was impossible for the tariff to have had effect over the specific terms of the contract.

At the outset, both sides acknowledge that:

> both the rights and liabilities as between an airline and a shipper are determined by the shipper's valid tariffs.... [I]t is clear that a carrier's valid federal tariffs which are applicable to the shipment at issue govern not only the nature and extent of its liability, but also the nature and extent of the shipper's right of recovery.

*North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2nd Cir. 1978) (citations omitted).

United had a right to seek tariff modifications. Clearly the contract contemplated tariff changes and the parties agreed to be bound by "future modifications thereof". Paragraph III A of the Contract. The fact that United's tariff was later found to be invalid creates no greater liability on its behalf. The rights and obligations of the parties are still governed by the contract. United applied for the change in order to comply with other regulations of the CAB which prohibited a charter operator from cancelling a charter for any reason other than physical impossibility less than ten (10) days before the scheduled departure. Thus, if United did not change its tariff requiring payment less than ten (10) days in advance of departure it could well have been obligated to provide services for which it was not paid. While United may have incorrectly employed an ex parte approach to amend its tariff with CAB—an approach the CAB sanctioned initially—at no time was the effect of the tariff stayed by CAB. Hence the tariff must be given its full legal effect until the time that the CAB rescinded its approval.

Accordingly, this Court rejects ILTA's argument that United's filing for a change of tariff was an anticipatory breach of the contract and hold that ILTA had a valid, binding contract with United which expressly contemplated changes in the applicable tariffs. Defendant United Airlines' cross-motion for summary judgment on the first, second, third and fourth causes of action is granted.

SO ORDERED.