**COUNTY OF SUFFOLK, in behalf of itself and all other ratepayers of the Long Island Lighting Company similarly situated, Plaintiff,**

v.

**LONG ISLAND LIGHTING COMPANY, General Electric Corporation, Stone & Webster Engineering Corp., Courter & Company Incorporated, Dravo Utility Constructors, Inc. and Comstock-Jackson, Defendants.**

No. 82 Civ. 2045.

United States District Court,
E.D. New York.

Oct. 27, 1982.

Reilly, Like & Schneider by Irving Like, Sp. Counsel, Babylon, N.Y., for Suffolk County.

Cadwalader, Wickersham & Taft, New York City, Hunton & Williams, Richmond, Va., for defendant Long Island Lighting Co.; George D. Reycraft, Richard J. Wiener, New York City, Edward M. Barrett, Rosalind M. Gordon, Long Island Lighting Co., Mineola, N.Y., Joseph M. Spivey, III, D. Alan Rudlin, Richmond, Va., of counsel.

Mayer, Brown & Platt, Chicago, Ill., for defendant General Elec. Co.; John M. Carroll, William A. Gordon, Chicago, Ill., of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for defendant Stone & Webster Engineering Corp.; Donald J. Zoeller, Laurence V. Senn, Jr., Barry Werbin, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Courter & Co. Inc.; Robert J. Bagdasarian, New York City, of counsel.

Leboeuf, Lamb, Leiby & Macrae, New York City, for defendant Dravo Utility Constructors, Inc.; John S. Kinzey, New York City, of counsel.

Parker Chapin Flattau & Klimpl, New York City, for defendant Comstock-Jackson; Alvin M. Stein, Menachem J. Kastner, New York City, of counsel.

BARTELS, District Judge.

This is a motion to remand, pursuant to 28 U.S.C. § 1447(c), an action commenced in the Supreme Court of the State of New York, Suffolk County, on June 23, 1982, and removed to this Court under 28 U.S.C. § 1441(a) and (b) on the ground that it is founded on a claim or right "arising under" the laws of the United States. Defendants maintain that this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337 [1]

because this action arises under the Atomic Energy Act ("the Act"), 42 U.S.C. §§ 2011 et seq., and its complementing regulations as adopted by the Nuclear Regulatory Commission ("NRC").

I

The underlying dispute involves the construction and operation of the Shoreham Nuclear Power Station ("Shoreham"), an electric power generating facility located at Shoreham, Long Island, New York, owned by defendant Long Island Lighting Company ("LILCO").[2] Plaintiff, County of Suffolk, a municipal corporation representing a population of over 1.3 million people, brought this action on behalf of itself and all other similarly situated LILCO ratepayers. The crux of its complaint is that Shoreham suffers from serious deficiencies in its design and construction that remain undetected because of inadequate inspection,[3] and that ratepayers have been, in effect, overcharged in order to finance the enormously escalated construction costs attributable to the wrongfully caused defects.[4] The complaint predicates liability on negligence, strict liability, breach of warranty, breach of contract, and misrepresentation and concealment. It seeks both legal and equitable relief, including enjoining the operation of Shoreham pending the

1. 28 U.S.C. § 1331 provides:
   The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1337 provides in pertinent part:
   (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . .

2. General Electric Corp. ("G.E."), Stone & Webster Engineering Corp. ("S & W"), Courter & Co. ("Courter"), Dravo Utility Constructors, Inc. ("Dravo"), and Comstock-Jackson ("C–J") are all major contractors hired by LILCO for the construction of Shoreham and have been joined as defendants. According to the complaint, G.E. designed and manufactured Shoreham's containment and nuclear steam supply systems, and related equipment; S & W performed as architect engineer, construction supervisor, and designer of various systems and components; the remaining defendants are

prime contractors, each of whom supplied and installed major components of Shoreham.

3. Defendants counter that Shoreham has been subjected to exhaustive Nuclear Regulatory Commission ("NRC") inspections amounting to 1200 inspection man days as well as two separate, independent physical inspections still in progress. Defendants' Memorandum at 6, 11.

4. Under the heading "Standing," plaintiff asserts that it has "already been required to pay increased electric rates as a result of the defective design and construction of . . . Shoreham . . . in that . . . LILCO has included construction costs [in its] rate base." ¶ 6. In the same paragraph plaintiff states that it "is responsible for the protection of the health, safety and well-being of its citizens, which would be adversely affected if design and construction defects in Shoreham caused or contributed to an accident."

outcome of a court-ordered and supervised physical inspection.

Paragraph seventeen states that defendants have "violated their statutory and common law duties of reasonable care in that they have been negligent in the design, fabrication, construction, installation, management, oversight, inspection, and testing of Shoreham." The subparagraphs that follow elaborate on this charge in only slightly greater detail, their essence being that defendants' negligence in all phases of the Shoreham project has led to unnecessary and unreasonable construction costs. Plaintiff also charges negligence in that

> Defendants have seriously and persistently violated the NRC's quality control (QC) and quality assurance (QA) regulations governing construction of Shoreham. (10 C.F.R. 50.55(e) and Part 50 Apps. A, B (Subparts I to VIII), C, D, G, I) and applicable codes such as the ASME code. The pattern of QA/QC breakdowns at Shoreham has involved Shoreham's critical safety systems and other systems essential to reliability and economy of operation.

*Id.*[5]

Claiming strict liability and breach of warranty, plaintiff alleges that Shoreham is defective and unreasonably dangerous, not reasonably fit for the ordinary purposes for which it was constructed, and that defendants had breached express and implied warranties that Shoreham was free of design and construction defects and fit for the purposes for which it was constructed. The injury alleged as a result of defendants' negligence and strict liability is higher electric rates and the risk of major accident if Shoreham is allowed to operate. ¶¶ 29–32.

Asserting breach of contract and third-party beneficiary status, plaintiff in paragraph thirty-five states that defendants General Electric Corp. ("G.E."), Stone & Webster Engineering Corp. ("S & W"), Courter & Co. ("Courter"), Dravo Utility Constructors, Inc. ("Dravo"), and Comstock-Jackson ("C–J") breached their contracts with LILCO "to sell, deliver, design and construct ... Shoreham free of defects, capable of performing safely, reliably, and economically, and at a price which did not include unnecessary and unreasonable costs caused by design and construction defects."

Finally, plaintiff asserts misrepresentation and concealment arising from LILCO's actions in failing to disclose to the New York State Public Service Commission ("PSC") and ratepayers design and construction defects in Shoreham which misled the PSC into enlarging LILCO's rate base to include construction costs arising from such defects.[6] ¶¶ 40–44.

---

5. Additional references to federal regulations adopted pursuant to the Atomic Energy Act ("the Act") are incorporated by reference into all four causes of action.

Paragraph 13 alleges defendants' responsibility for "the substantial cost of correcting defects in piping which could have been avoided had defendants complied with the NRC's [Quality Assurance/Quality Control] requirements...."

Paragraph 14 also contains allegations of noncompliance with federal regulatory standards and deviations in construction of Shoreham from its design. After characterizing the NRC's Inspection and Enforcement ("I & E") reports as "incomplete ... because the NRC makes only random, unsystematic, incomplete, ineffective inspections of Shoreham," plaintiff alleges that the I & E reports reveal deficiencies in "Shoreham systems, important to safety ...."

Paragraph 15 alleges that "the defendants and the NRC failed to conduct sufficient and adequate physical inspections and tests of all the critical safety systems of Shoreham." Plaintiff refers to 10 C.F.R. 50, App. A (General Design Criteria for Nuclear Power Plants) and 10 C.F.R. 100, App.A (Seismic and Geologic Siting Criteria for Nuclear Power Plants) as delimiting those safety systems inadequately inspected and tested.

6. LILCO has applied on several occasions to the New York State Public Service Commission ("PSC") to include part of its construction costs ("Construction Work in Progress" ("CWIP")) in its rate base. To date, plaintiff asserts, some $355 million of Shoreham's construction costs have been included as CWIP in LILCO's rate base. A significant percentage of that figure, they maintain, represents charges assumed on account of defective design and construction. LILCO is presently before the PSC in an effort to obtain permission for a further rate increase based on its Shoreham construction costs. (Case No. 27563).

The relief sought in the complaint is threefold. The complaint (1) demands a court-ordered and supervised "design review and physical inspection of all the critical safety systems of the Shoreham plant, as such systems are defined, pursuant to NRC regulations and those systems essential to reliability and economy of operation, as such are defined pursuant to PSC regulations...," ¶ 1A at 31; (2) seeks damages for past "overcharges" in electric rates, reflecting increases in Shoreham construction costs attributable to design or construction defects, ¶ 2 at 32 [7]; and (3) an injunction against LILCO enjoining LILCO "from commencing operation of Shoreham pending submission of the report of inspection to this court and the final disposition of any further judicial proceedings thereon." ¶ 7 at 33.

In support of its motion, plaintiff claims that its complaint states traditional common law causes of action between private parties and therefore affords no basis for removal from state court. While conceding that the Act could preempt any state claims predicated upon the radiological safety aspects of Shoreham, plaintiff maintains that its action is a "pocketbook" action and not a "safety" action. As for the complaint's multiple references to federal regulatory law, plaintiff maintains that alleged noncompliance therewith merely creates evidentiary issues bearing on its various state law theories of liability. It argues that the Act provides no express or implied private cause of action and that consequently, in order to assert federal question jurisdiction, the Court would be compelled to fashion a federal common law remedy which, according to the plaintiff, is prohibited by *In re "Agent Orange" Product Liability Litigation,* 635 F.2d 987 (2d Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981).

In support of removal, defendants contend that the true objective of the complaint is to regulate the safety of Shoreham, which is peculiarly within the province of the Act and its regulations.[8] Therefore, defendants say that plaintiff is asserting an implied private cause of action under the Act which creates federal question jurisdiction. They add that the Act and its regulations have preempted all state law causes of action, thus creating "arising under" jurisdiction whether or not federal law provides a basis for ultimate relief to the plaintiff.

## II

A defendant's right to remove a state court civil action to federal court is governed by 28 U.S.C. § 1441(a) and (b), which provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The general rule, of course, is that a case can be removed from state court only if the federal court would have had original jurisdiction. *Arkansas v. Kansas & Texas Coal Co.,* 183 U.S. 185, 22 S.Ct. 47, 46 L.Ed.

---

**7.** Plaintiff also seeks injunctive relief prospectively barring LILCO from charging or collecting from rate-payers any revenues arising from those passed-on costs, and further enjoining LILCO from applying to the PSC for inclusion of any of those costs in its rate base.

**8.** In support of this contention defendants cite twenty-two different instances in which plaintiff's complaint allegedly implicates the radiological safety aspects of Shoreham and the assorted regulations which govern its construction and operation. Defendants' Memorandum at 18–20.

144 (1901); *Illinois v. Kerr-McGee Chemical Corp.,* 677 F.2d 571 (7th Cir.1982). Federal jurisdiction on removal, however, is exclusively derivative. If the state court from which it was removed did not also enjoy subject matter jurisdiction, removal is inappropriate even if the action could have been brought originally in the federal courts. Thus, a case once removed over which the federal court has exclusive jurisdiction must be dismissed because the state court did not have subject matter jurisdiction. *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); *Kerr-McGee,* 677 F.2d at 575; *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 658 (9th Cir.1972).

In a case such as this where the right to removal depends on "arising under" jurisdiction, the important issue is whether a federal question appears on the face of the complaint or is impliedly the goal of the complaint. *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Tennessee v. Union and Planters' Bank,* 152 U.S. 454, 460, 14 S.Ct. 654, 656, 38 L.Ed. 511 (1894); *Kerr-McGee,* 677 F.2d at 575; *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 249 (7th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). A defendant's assertion of an issue of federal law in the pleadings or in the petition for removal does not create a federal question. *Phillips Petroleum,* 415 U.S. at 127–28, 94 S.Ct. at 1003–04; *Arkansas v. Kansas & Texas Coal Co.,* 183 U.S. at 188, 22 S.Ct. at 48; *Kerr-McGee,* 677 F.2d at 575; *Nuclear Engineering,* 660 F.2d at 249. In assessing the jurisdictional question in an application for removal a court "need not blind itself to the real gravamen of a claim because plaintiff tenders a blindfold in the form of artificial characterization in its complaint." *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79, 82 (E.D.N.Y.1980). Where the main thrust or real nature of a complaint is federal, careful avoidance of any federal allegations in drafting the pleadings will

not avail the plaintiff. *Nuclear Engineering,* 660 F.2d at 249; *Three J Farms, Inc. v. Alton Box Board Co.,* 1979–1 Trade Cas. (CCH) (D.S.C.1978), ¶¶ 62,423, 76,547, 76,-550, *rev'd on other grounds,* 609 F.2d 112 (4th Cir.1979), *cert. denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.,* 270 F.Supp. 264 (E.D.N.Y.1967); *Minkoff v. Scranton Frocks, Inc.,* 172 F.Supp. 870, 873 (S.D.N.Y.1959); *Produce Terminal Realty Corp. v. New York, N.H. & H.R. Co.,* 116 F.Supp. 451, 453 (D.Miss. 1953); *Pocahontas Terminal Corp. v. Portland Building & Construction Trade Council,* 93 F.Supp. 217, 219, 225 (D.Me.1950). On the other hand, where plaintiff has a remedy under both state and federal law, it may base its claim solely on state law and thereby defeat defendant's potential right to removal. "[T]he party who brings a suit is master to decide what law he will rely on." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *New York v. Local 144, Hotel, Nursing Home & Allied Health Services Union,* 410 F.Supp. 225 (S.D.N.Y.1976); *Coditron Corp. v. AFA Protective Systems,* 392 F.Supp. 158 (S.D.N.Y.1975); *see also Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 663, 81 S.Ct. 1303, 1307–08, 6 L.Ed.2d 584 (1961); *Great Northern Railway Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918). In the instant case, however, plaintiff does not base its right to relief solely on state law, but relies on the violation of federal law as well.

### III

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books." *Gully v. First National Bank,* 299 U.S. at 112, 57 S.Ct. at 97. Viewing the background of this case, the Court concludes that the question of jurisdiction is more aptly governed by the principles expressly enunciated in *Gully* and *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229 (2d Cir.1978). In *Gully,* a state

tax collector sued a national bank to recover state taxes assessed upon the shares of a predecessor national bank, relying upon a contract by the defendant to assume its predecessor's debts. The bank asserted that federal jurisdiction existed because the "power to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute...." 299 U.S. at 112, 57 S.Ct. at 97. The Court, however, remanded the case for lack of a substantial connection between enforcement of the contract and the existence of a controversy arising under federal law. Justice Cardozo, writing for the Court, advised that it was futile to attempt to define a cause of action without reference to context, and that to define "broadly and in the abstract 'a case arising under the Constitution or laws of the United States' [had] hazards of a kindred order." *Id.* at 117, 57 S.Ct. at 99. Nonetheless, Justice Cardozo formulated a "test" for "arising under" jurisdiction requiring that federal law be an essential element of plaintiff's cause of action, *id.* at 112, 57 S.Ct. at 97, and then amplified this "test", quoting from *Shulthis v. McDougal,* 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912):

'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends.'

299 U.S. at 114, 57 S.Ct. at 98.

The Second Circuit has followed this approach in *North American Phillips Corp. v. Emery Air Freight Corp., supra.* There the plaintiff brought suit in a state court to recover the value of goods lost when defendant's cargo truck was hijacked. It was removed on the ground that liability was limited under the tariff filed under Section 403(b) of the Federal Aviation Act of 1958. The court found that the shipper's right to recovery was predicated upon the tariff covering interstate shipment, a field occupied solely by federal law, stating:

The court must ascertain from the complaint whether federal law is a pivotal issue in the case, one that is basic in the determination of the conflict between the parties. [*Gully,* 299 U.S. at 117–18, 57 S.Ct. at 99–100]; *Ivy Broadcasting Co. v. AT & T,* 391 F.2d 486, 489 (2d Cir.1968).

579 F.2d at 233.

■ Whether a question of federal law is "pivotal" to plaintiff's claims or, as in *Gully,* merely "lurking in the background," 299 U.S. at 117, 57 S.Ct. at 99, is, as its very statement suggests, a matter of degree. *See Sylgab Steel & Wire Corp. v. Strickland Transportation Co.,* 270 F.Supp. at 268. The Court finds here that the federal law is more than lurking in the background for plaintiff's reliance on violation of the Act and the NRC regulations appears on the face of the complaint and is an essential element in establishing its right to relief. Paragraphs 13(e) and 14A allege defects in Shoreham's design and construction, such defects existing by virtue of general noncompliance with federal regulations. Paragraph 15(a) seeks to establish defects by specifically invoking 10 C.F.R. 50, App. A, and 10 C.F.R. 100, App. A, subparts III(c), VI(a)(1) and (b)(3). All three paragraphs, as well as paragraph 17(c), are incorporated by reference into each of the plaintiff's four causes of action.[9] The latter alleges that "Defendants have seriously and persistently violated" 10 C.F.R. 50.55(e) and 10 C.F.R. 50, Apps. A, B, C, D, G, and I.[10] That negligence could have occurred even assuming compliance with the regulations, as plaintiff maintains, may or may not be true. In this case that question is irrelevant because the complaint asserts such noncompliance. The determination as to whether or not the regulations were violated could hardly be avoided where the complaint alleges the same as a basis for defendants' negligence.

**9.** *See* note 5, *supra.*

**10.** *See* text accompanying note 5, *supra.*

■ Our discussion has focused on the first cause of action. Whether each of the remaining causes of action equally rely on federal law need not be determined to justify removal of the entire case. *See Sylgab Steel,* 270 F.Supp. at 271. In fact, however, these remaining causes—strict liability, breach of contract, and misrepresentation and concealment—are also grounded on allegations of design and construction defects, and these allegations, in turn, are grounded on noncompliance with the federal regulations.

■ As heretofore stated, plaintiff argues that its action cannot be said to arise under federal law because federal law does not provide the remedies it seeks.[11] The availability of a federal remedy is unnecessary to create "arising under" jurisdiction as long as plaintiff's right to relief depends upon the construction or application of federal law. *Gully,* 299 U.S. at 114, 57 S.Ct. at 98; *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *see* Note, *The Outer Limits of "Arising Under,"* 54 N.Y.U.L.Rev. 978, 997–1003 (1979). The complaint's operative paragraphs demand recovery under state common law, but that recovery, as alleged in the complaint, necessarily and substantially depends on noncompliance with federal law. The context of the present case is not similar to *Gully* and *Pan American Petroleum, supra,* where the contract-based complaints did not similarly rely on federal law.

## IV

■ Both parties have devoted much effort to the issue of preemption. It is clear that the Atomic Energy Act, through the doctrine of preemption, may serve as a bar to state regulation of nuclear power plant safety or radiological hazards. *Northern States Power Co. v. Minnesota,* 447 F.2d 1143, 1154 (8th Cir.1971), *aff'd,* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972); *Pacific Legal Foundation v. State Energy Resources Conservation and Development Commission,* 659 F.2d 903 (9th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); *State Department of Environmental Protection v. Jersey Central Power & Light Co.,* 69 N.J. 102, 351 A.2d 337 (1976); *see also Stone & Webster Engineering Corp. v. Ilsley,* Nos. 81–7640, 81–7660, slip op. at 5099–5103 (2d Cir. Sept. 30, 1982). The above cases are hardly relevant here since they did not involve federal jurisdiction upon removal, whereas the important issue on this motion is whether preemption by the Act and its regulations effectively forces the plaintiff to assert a claim which, in fact, "arises under" federal law.

The issue of preemption has received different interpretations in different contexts. The three prominent cases presented to this Court are *Kerr-McGee, supra* (relied upon by plaintiff), *Billy Jack For Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union,* 511 F.Supp. 1180 (S.D.N.Y.1981) (relied upon by defendants), and *Long Island Railroad Co. v. United Transportation Union,* 484 F.Supp. 1290 (S.D.N.Y.1980). All three cases involve different circumstances and are reconcilable. In *Kerr-McGee,* which involved the Act, Illinois commenced an action in state court charging Kerr-McGee with violations of state law arising out of the maintenance and operation of a radioactive waste disposal site. Illinois' complaint made no reference to federal statutory or case law.[12] Kerr-McGee removed the case on the ground that Illinois' complaint raised a fed-

---

11. 42 U.S.C. § 2239(a) provides for intervention at hearings before the NRC upon the request of parties whose interest may be affected by licensing or construction permit proceedings. Plaintiff has intervened in NRC proceedings continuing to date. The Act also provides for judicial review of NRC final orders pursuant to § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq. See* 42 U.S.C. § 2239(b). In addition, the NRC is expressly authorized to inspect nuclear facilities for compliance with federal regulations. *See* 10 C.F.R. § 21.41 (1982). None of these provisions are of assistance to the plaintiff in this action.

12. In the instant case, federal jurisdiction is based not on preemption, but on the pivotal role of federal law as pleaded in the complaint.

eral question. The district court denied Illinois' motion to remand on the ground that the Act's regulatory scheme had preempted state regulation of radioactive waste disposal, and that interpretation of federal law was thus necessarily involved in the complaint. 677 F.2d at 573–74. On appeal, the court rejected the district court's finding of federal question jurisdiction and held that "the state's complaint pleads only state causes of action and does not raise a federal question justifying removal...." *Id.* at 577. It further added that the issue of federal preemption in that case was "merely a defense to state law claims." *Id.* at 578. Thus there was nothing in the complaint which expressly or impliedly indicated a basis for recovery under federal law. The doctrine of preemption, without more, did not transform plaintiff's state claims into ones arising under federal law.

A similar result was reached in *Long Island Railroad Co. v. United Transportation Union* where plaintiff brought a state cause of action charging defendant union with violations of common law and New York's statutory Taylor Law, seeking to enjoin a threatened strike. The defendant removed to federal court on the ground that the Federal Railway Labor Act preempted the state law claims and thus created "arising under" jurisdiction. The court, finding it " 'illogical to say that the litigant's claim is really predicated on a body of law which grants him no rights,' " 484 F.Supp. at 1293 and quoting *New York v. Local 1115 Joint Board, Nursing Home & Hospital Division*, 412 F.Supp. 720, 723 (E.D.N.Y.1976), remanded the case to state court. In that case federal law provided no relief which the plaintiff sought but, in fact, stood as a bar to plaintiff's state law claims. Accordingly, preemption by federal law created a defense to such state law claims.

In *Billy Jack For Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, plaintiff asserted state common law tort grounds in an action seeking to enjoin union picketing. Nowhere in the complaint did plaintiff refer to federal law. It was obvious from the complaint that the plaintiff was seeking what, in effect, was relief under the National Labor Relations Act which preempted any state law claim. The district court, upon motion, refused to remand the case after the defendant had removed the same to the federal court, stating that the federal law "arguably prohibited" the conduct challenged in the complaint and that, consequently, plaintiff's claim arose under federal law. In *North American Phillips* the court reached a similar result in holding that the case was removable because it arose in fact under the Federal Aviation Act which preempted the claim asserted in the complaint. 579 F.2d at 233–34. There is no inconsistency in these holdings because in every case where removal was granted federal law provided and, indeed, preempted relief, whereas in the other two cases where preemption was held to be a defense, the complaint did not set forth a claim upon which federal relief could be granted.

Applying this principle to the instant complaint, it is readily apparent that the Act, as presently construed by the courts, does not establish a preemptive remedial scheme, as in *Billy Jack* or *North American Phillips*, that would potentially accrue to the benefit of this plaintiff for jurisdictional purposes.

## V

It need only be added that this case, as in *Billy Jack*, does not fall within the parameters of the exclusive jurisdiction principle because neither the federal courts nor the NRC have been given exclusive authority to provide remedies in private actions complaining of design and construction defects in nuclear power stations.

Here the complaint is not predicated solely upon state common law but the relief depends upon violation of the Act and its regulations. Since the construction of a federal law is pivotal to plaintiff's claims, this case meets the many tests for "arising under" jurisdiction and, consequently, the

motion to remand must be and hereby is DENIED.

SO ORDERED.