Mario M. CUOMO, Plaintiff,

v.

LONG ISLAND LIGHTING COMPANY, Defendant.

COUNTY OF SUFFOLK, Plaintiff,

v.

LONG ISLAND LIGHTING COMPANY, Defendant.

No. CV–84–2328.

United States District Court, E.D. New York.

June 15, 1984.

---

**1388**

Fabian G. Palamino, Special Counsel to Governor Mario M. Cuomo, Executive Chamber, Albany, N.Y., for plaintiff Cuomo.

Martin Bradley Ashare, Suffolk County Atty., Hauppauge, N.Y., Kirkpatrick, Lockhart, Hill, Christopher & Phillips by Herbert H. Brown, Lawrence C. Lanpher, Washington, D.C., Kirkpatrick, Lockhart, Johnson & Hutchison by David A. Brownlee, Michael J. Lynch, Kenneth M. Argentieri, Pittsburgh, Pa., for plaintiff Suffolk County.

Edward M. Barrett, Mineola, N.Y., Hunton & Williams by W. Taylor Reveley, III, James E. Farnham, K. Dennis Sisk, Lewis F. Powell, III, Richmond, Va., for Long Island Lighting Co.

ALTIMARI, District Judge:

Plaintiffs in two related lawsuits move to remand, pursuant to 28 U.S.C. § 1447(c), the instant actions commenced in the Supreme Court of the State of New York, Albany County, and the Supreme Court of the State of New York, Suffolk County, respectively, back from whence they came.[1] Defendant removed the actions to this Court under 28 U.S.C. § 1441(a) and (b) on the ground that this Court has original jurisdiction under 28 U.S.C. §§ 1331 and

---

1. The action by Mario M. Cuomo against LILCO was originally commenced in the State Supreme Court, Albany County, and removed to the United States District Court for the Northern District of New York. On May 17, 1984, the Honorable Roger J. Miner ordered that the action be transferred to the Eastern District of New York. In addition, prior to removal the parties agreed to transfer the action to the State Supreme Court, Suffolk County, where it would be consolidated with the County of Suffolk's (the "County") action.

1337, because the actions arise under the Constitution and laws of the United States, particularly the Supremacy Clause and the Fourteenth Amendment, as well as the Atomic Energy Act, 42 U.S.C. § 2011 *et seq.* ("AEA") and its implementing regulations as adopted by the Nuclear Regulatory Commission ("NRC"). Defendant cross-moves pursuant to Fed.R.Civ.P. 42(a) to consolidate these actions with one presently pending before the Court, *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk,* 101 F.R.D. 497 (hereinafter the "*Citizens'* action").

## BACKGROUND

The principal underlying dispute between the parties is whether Long Island Lighting Company's ("LILCO") Shoreham Nuclear Power Facility ("Shoreham") can be operated safely. As Judge Cardamone recently observed, "The uncertainty about whether [Shoreham] can be operated safely has stirred deep public concern. Shoreham's critics contend that as the beauty of the Acropolis symbolizes the Golden Age of ancient Greece, an unsightly, deserted nuclear power plant will symbolize Twentieth Century America. Its defenders claim that a safe-working nuclear plant producing electricity, as in France, Britain, Japan and Germany, will free America from dependence on foreign oil and symbolize the triumph of technology over the loss of natural resources." *County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 55 (2d Cir.1984). Like Judge Cardamone, however, "we are not called upon to answer these questions involving large benefits and risks...." *Id.* Neither must we an-

swer the question of whether the actions of the County of Suffolk (hereinafter the "County") in failing to participate in off-site emergency planning for Shoreham are preempted by the AEA. We need only decide whether LILCO and Mario M. Cuomo properly removed these actions to the United States District Court.

The County's complaint [2] seeks a declaration that LILCO's implementation of its radiological emergency response plan, which is referred to as the "Transition Plan" (hereinafter the "Plan"), is unlawful and in violation of the Constitution and laws of the State of New York. *Citing,* N.Y. Const. arts. 3, 9; N.Y.Exec. Law, art. 2–B (McKinney 1982 & Supp.1983); N.Y. Mun.Home Rule Law § 10 (McKinney 1969 & Supp.1983).[3] LILCO submitted the Plan to the NRC as part of the licensing proceedings for Shoreham. The County and the Governor of the State of New York, Honorable Mario M. Cuomo, having determined that no safety evacuation plan is feasible, took no part in submitting the Plan to the NRC and state that they will not participate in implementing it. Thus, the Plan was developed and submitted to the NRC by LILCO alone.

Paragraph fifteen of the County's complaint states that LILCO has created the "Local Emergency Response Organization" (hereinafter the "LERO") for the purpose of implementing the Plan. The LERO is staffed by approximately two thousand (2,000) persons, most of whom are LILCO employees and none of whom are officials of the County or the State of New York we are told.

**2.** Mario M. Cuomo's complaint is practically identical to the County's complaint. He too seeks a judgment declaring LILCO's Plan to be violative of New York State law. For purposes of convenience and economy, we will focus on the County's complaint in addressing the instant motions. Indeed, in opposing the Cuomo motion, LILCO relies on its brief in opposition to the County's motion.

**3.** Paragraph seventeen of the Cuomo complaint likewise alleges that the Plan violates N.Y. Const. arts. 3, 9; N.Y.Exec.Law art. 2–B; and N.Y.Mun.Home Rule Law § 10. In addition,

paragraph thirty-three alleges that LILCO's implementation of its Plan would also violate the following state laws:

N.Y.Agric. & Mkts.Law §§ 16(24), 16(27), 16(35), 71–*l*, 202–b (McKinney 1972 & Supp. 1983).

N.Y.Exec.Law §§ 22(3), 23(7)(b) & (c), 28(1), 28(2)(a) & (b) (McKinney 1982).

N.Y.Penal Law § 195.05 (McKinney 1975).

N.Y.Pub.Health Law §§ 201(1)(k) & (1) & (r), 206(1)(a) & (k) (McKinney 1971 & Supp. 1983).

N.Y.Veh. & Traf.Law §§ 1110, 1114, 1602 (McKinney 1970 & Supp.1983).

Paragraph seventeen of the County's complaint states in part that:

"In the event of a nuclear accident at Shoreham, LILCO's Transition Plan provides that LILCO, through its alter ego LERO, and without consent or approval by, or participation of, Suffolk County or the State of New York, will arrogate to itself functions purporting to protect the health, welfare and safety of residents and transients within Suffolk County. The offsite emergency response to the accident for a distance of fifty miles from that plant will, under LILCO's Transition Plan, be under the management, direction and control of LILCO. Those public safety functions which are possessed inherently by local and state government officials for exercise through the police power will, according to LILCO's Transition Plan, be possessed and exercised by LILCO employees."

Subparagraphs of paragraph seventeen describe the functions LERO will perform in some detail.[4]

In paragraph nineteen of its complaint, the County states that "LILCO has asserted that it has the necessary legal authority to implement its Transition Plan and 'to effectively protect the safety and health of the public.'" *Quoting*, LILCO Transition Plan at p. 1.4–1.[5] Taking issue with LIL-

CO's position, the County claims that under the Constitution and laws of the State of New York, "the police power is inherent in and can be possessed and exercised only by the State of New York itself or by a political subdivision of the State if there has been a proper delegation of authority from the State to such subdivision." Complaint par. 20. Further, the County claims that the State has delegated its police powers within Suffolk County only to the Government of Suffolk County, and has not delegated its police powers to LILCO.

Accordingly, the County states in paragraph twenty-one of the complaint that:

"An actual and justifiable controversy exists between the plaintiff and the defendant concerning the legality, under the Constitution and laws of the State of New York, of LILCO implementing its Transition Plan. A resolution of this dispute is necessary because LILCO is representing that it has authority under the laws of the State of New York to implement the Transition Plan ... which usurps the police power authority of the State of New York and Suffolk County— and LILCO is implementing that Plan. LILCO's acts in implementing such [a plan] have violated, are violating and will

4. The County's complaint states that:
"In the LILCO Transition Plan, among other things LILCO employees, and not any local or state government official, are designated (a) to decide what actions should be taken to protect the health, welfare, and safety of persons in the EPZs; (b) to determine whether and how more than one hundred thousand Suffolk County residents and transients within the ten-mile EPZ, and several hundred thousand persons beyond that who will respond to the emergency, should be evacuated; (c) to advise Suffolk County residents and transients, through announcements on the Emergency Broadcast System, press statements and press conferences, what specific actions they should take to protect their health, welfare and safety; (d) to activate emergency sirens which LILCO has installed through-out the ten-mile EPZ to alert the public to the occurrence of a nuclear accident or radiological emergency; (e) to manage and direct the flow of traffic on roads within Suffolk County through various means includ-

ing blocking lanes, altering roads to one-way flow, erecting barricades and installing road signs; (f) to control and direct the removal and displacement of more than one hundred thousand residents and transients from the ten-mile EPZ; and (g) to establish controls over drinking water, milk, food, crops and livestock in the fifty-mile EPZ, an effort which could affect millions of people."

5. More specifically, the County quotes LILCO's Transition Plan at p. 1.4–1:
"[N]othing in *New York State law* prevents the utility from performing the necessary functions to protect the public. To the contrary, Article 2–B of New York State Executive Law, § 20.1.e, makes it the policy of the State that State and local plans, organization arrangements, and response capability 'be the most effective that current circumstances and existing resources allow.'"
Complaint par. 19, *quoting* Lilco transition plan at p. 1.4–1. (emphasis added).

violate the Constitution and laws of the State of New York." [6]

The County seeks a declaratory judgment, pursuant to N.Y.Civ.Prac.Law § 3001,[7] that LILCO's implementation of its Plan is unlawful and illegal under the Constitution and laws of the State of New York.

## DISCUSSION

### I.

28 U.S.C. § 1441(a) and (b) provides:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State of which such action is brought."

In the instant action, since there is no diversity of citizenship between the parties, *see* 28 U.S.C. § 1332, the dispositive question on the issue of whether removal was proper under section 1441, is whether the County's complaint states a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

■ On a motion to remand, the removing defendant bears the burden of establishing that the case is within the Federal Court's removal jurisdiction. *Irving Trust Co. v. Century Export & Import, S.A.,* 464 F.Supp. 1232, 1236 (S.D.N.Y.1979). Especially is this so when "plaintiffs strenuously argue that they are not relying on any federal substantive right and no reference to a federal provision is made in plaintiff's complaint." *Barnett v. Faber Coe & Gregg, Inc.,* 291 F.Supp. 178, 180 (S.D.N.Y. 1968); *Jody Fair, Inc. v. Dubinsky,* 225 F.Supp. 695, 696 (S.D.N.Y.1964).

■ It is hornbook law that an action can be removed from State to Federal Court only if it might have been brought there originally. *See,* Wright, *Hornbook of the Law of Federal Courts,* § 38, at 148 (3d ed. 1976); *see also* 14 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3721, at 516 (1976); 1 A J Moore, *Moore's Federal Practice,* par. O. 157[5], at 118 (1983); 2 *Cyclopedia of Federal Procedure,* § 3.12 (3d ed. 1980). Stated more precisely, and recently by a Judge of this Court to two of the parties herein, "[t]he general rule ... is that a case can be removed from state court only if the federal court would have had original jurisdiction." *County of Suffolk v. Long Island Lighting Co.,* 549 F.Supp. 1250, 1254 (E.D. N.Y.1982), *citing, Arkansas v. Kansas & Texas Coal Co.,* 183 U.S. 185, 22 S.Ct. 47,

6. Paragraph twenty-two of the County's complaint states that:

"The Chairman of the Atomic Safety and Licensing Board of the NRC, which is presently conducting hearings on the LILCO Transition Plan, has stated on the record his belief that the question of the lawfulness of the Transition Plan under the Constitution and laws of the State of New York should be resolved by the courts of the State of New York."

Paragraph twenty-three further states that:

"Executive officials within the Federal Emergency Management Agency, which is reviewing the LILCO Transition Plan at the request of the NRC, have stated, in official correspondence to the NRC that it is essential that a determination be made as to whether LILCO has legal authority to assume management and control of the offsite emergency response to a nuclear accident at Shoreham under the laws of the State of New York."

*See also,* paragraphs nineteen and twenty of the Cuomo complaint.

7. Section 3001 of New York's Civil Practice Law and Rules provides as follows:

"The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds."

N.Y.Civ.Prac.Law § 3001 (McKinney 1974).

46 L.Ed. 144 (1901); *Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571 (7th Cir.) *cert. denied,* 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982).

■■■ In order to support removal where it is predicated on the plaintiffs stating a claim arising under the Constitution, laws or treaties of the United States, as here, it is well established that the existence of a Federal question must necessarily appear on the face of the plaintiffs' complaint. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974); *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–8, 81 L.Ed. 70 (1936); *Tennessee v. Union and Planters Bank*, 152 U.S. 454, 460, 14 S.Ct. 654, 656, 38 L.Ed. 511 (1894). Thus, while "the statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts," *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (hereinafter *"Franchise Tax Bd."*), and "[w]hile the precise boundaries to which Federal jurisdiction extends are not matters upon which all agree," *Powers v. South Central Union Food & Commercial Workers Union and Employers Health and Welfare Trust*, 719 F.2d 760, 763 (5th Cir.1983), one "powerful doctrine has emerged" whose vitality is unquestioned—the "well-pleaded complaint rule." *See, Franchise Tax Bd., supra,* 463 U.S. at ——, 103 S.Ct. at 2846. In *Franchise Tax Bd., supra*, the Supreme Court, quoting from its prior decision in *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914), described that doctrine as follows:

"[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose."

463 U.S. at ——, 103 S.Ct. at 2846. *See, Phillips Petroleum Co. v. Texaco, Inc., supra,* 415 U.S. at 127–28, 94 S.Ct. at 1003–04; *Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584; *Gully v. First National Bank, supra,* 299 U.S. at 113, 57 S.Ct. at 98; *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *Tennessee v. Union and Planters' Bank, supra,* 152 U.S. at 460–61, 14 S.Ct. at 656; *Metcalf v. City of Watertown,* 128 U.S. 586, 589, 9 S.Ct. 173, 174, 32 L.Ed. 543 (1888). Under the doctrine and "[f]or better or worse," "a defendant may not remove a case to Federal Court unless the *plaintiffs'* complaint establishes that the case 'arises under' Federal law." *Franchise Tax Bd., supra,* 463 U.S. at ——, 103 S.Ct. at 2847. Accordingly, a case does not arise under Federal law because of a defendant's assertion of an issue of Federal law in the pleadings or in the petition for removal, *Phillips Petroleum Co. v. Texaco, Inc., supra,* 415 U.S. at 127–28, 94 S.Ct. at 1003, nor may a Federal question be inferred from a defense pleaded or one expected to be made. *Gully v. First National Bank, supra,* 299 U.S. at 113, 57 S.Ct. at 98; *Debevoise v. Rutland Railway Co.,* 291 F.2d 379, 380 (2d Cir.), *cert. denied,* 368 U.S. 876, 82 S.Ct. 123, 7 L.Ed.2d 77 (1961).

■■■ Taken one step further, a defense of Federal preemption, like any other defense, cannot serve as a basis for Federal jurisdiction. *Franchise Tax Bd., supra,* 463 U.S. at —— & n. 11, 103 S.Ct. at 2848 & n. 11, *citing with approval, Trent Realty Associates v. First Federal Savings & Loan Ass'n,* 657 F.2d 29, 34–35 (3d Cir.1981) (Home Owner's Loan Act); *First National Bank of Aberdeen v. Aberdeen National Bank,* 627 F.2d 843, 850–52 (8th Cir.1980) (National Bank Act); *State of Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 660 (9th Cir.1972)

(Federal Antitrust Laws). The cases which have embraced this view are numerous, *see,* cases cited above in *Franchise Tax Bd., supra; Powers v. South Central Union Food & Commercial Workers Union, supra,* 719 F.2d at 764 (ERISA); *Illinois v. General Electric Co.,* 683 F.2d 206, 208 (7th Cir.1982); *cert. denied sub. nom Hartigan v. General Electric Co.,* —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *Illinois v. Kerr-McGee Chemical Corp., supra,* 677 F.2d at 577–78 (AEA); *Nalore v. San Diego Federal Savings & Loan Ass'n,* 663 F.2d 841, 842 (9th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982) (Home Owner's Loan Act); *Guinasso v. Pacific First Federal Savings & Loan Assoc.,* 656 F.2d 1364, 1366 (9th Cir.1981); *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982) (Home Owner's Loan Act); *Madsen v. Prudential Federal Savings & Loan Assoc.,* 635 F.2d 797, 801 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981) (Home Owner's Loan Act); *Home Federal Savings & Loan Assoc. v. Insurance Department,* 571 F.2d 423, 426 (8th Cir.1978) (Home Owner's

Loan Act); *Bailey v. Logan Square Typographers, Inc.,* 441 F.2d 47, 51–52 (7th Cir. 1971) (copyright),[8] and while there is authority to the contrary,[9] after the Supreme Court's decision in *Franchise Tax Bd., supra,* it can no longer be doubted that, as a general rule, a defense of Federal preemption does not provide a basis for Federal jurisdiction where one is otherwise lacking.

For example, in *Illinois v. Kerr-McGee Chemical Corp., supra,* 677 F.2d 571, the State of Illinois filed a complaint against Kerr-McGee in the Circuit Court of Illinois for DuPage County. The complaint alleged that Kerr-McGee's operation and maintenance, under license from the NRC, of a site used to possess and store thorium ores, a nuclear source material subject to regulation by the NRC, 42 U.S.C. § 2014(2), violated the Illinois Environmental Protection Act and other state statutes pertaining to the disposal of hazardous wastes. Kerr-McGee had been working since 1975, at the NRC's direction, to formulate a plan for decommissioning and stabilizing the site, which plan Illinois had taken the opportunity to comment on.

**8.** Further support for this proposition may be found in the following cases as well: *La Freniere v. General Electric Co.,* 572 F.Supp. 857 (N.D. N.Y.1983); *Martin v. Wilkes-Barre Publishing Co.,* 567 F.Supp. 304 (M.D.Pa.1983); *Schmidt v. National Organization for Women,* 562 F.Supp. 210 (N.D.Fla.1983); *Sarnelli v. Tickle,* 556 F.Supp. 557 (E.D.N.Y.1983); *Buice v. Buford Broadcasting, Inc.,* 553 F.Supp. 388 (N.D.Ga. 1983); *Chappell v. SCA Services, Inc.,* 540 F.Supp. 1087 (C.D.Ill.1982); *Eureka Federal Savings & Loan Association of San Francisco v. Flynn,* 534 F.Supp. 479 (N.D.Cal.1982); *Drivers, Chauffeurs & Helpers Local Union No. 639 v. Seagram Sales Corp.,* 531 F.Supp. 364 (D.C.D.C. 1981); *Schultz v. Coral Gables Federal Savings & Loan Association,* 505 F.Supp. 1003 (S.D.Fla. 1981); *Freeman v. Colonial Liquors, Inc.,* 502 F.Supp. 367 (D.Md.1980); *Smart v. First Federal Savings & Loan Association of Detroit,* 500 F.Supp. 1147 (E.D.Mich.1980); *Turner v. Bell Federal Savings & Loan Association,* 490 F.Supp. 104 (N.D.Ill.1980); *Long Island Railroad Co. v. United Transportation Union,* 484 F.Supp. 1290 (S.D.N.Y.1980); *Eure v. NVF Co.,* 481 F.Supp. 639 (E.D.N.C.1979); *Mabray v. Velsicol Chemical Corp.,* 480 F.Supp. 1240 (W.D.Tenn.1979); *State of California v. Glendale Federal Savings & Loan Association,* 475 F.Supp. 728 (C.D.Cal.

1979); *State of Nevada v. King,* 463 F.Supp. 749 (D.Nev.1979); *Oklahoma v. United Health & Retirement Association,* 436 F.Supp. 550, (W.D.Okl. 1977); *Borzello v. Sooy,* 427 F.Supp. 332 (N.D. Cal.1977); *Marquette National Bank of Minneapolis v. First National Bank of Omaha,* 422 F.Supp. 1346 (D.Minn.1976); *Committee of Interns & Residents v. New York State Labor Relations Board,* 420 F.Supp. 826, (S.D.N.Y.1976); *Johnson v. First Federal Savings & Loan Association of Detroit,* 418 F.Supp. 1106 (E.D.Mich. 1976); *State of New York v. Local 115 Joint Board, Nursing Home & Hospital Employees Div.,* 412 F.Supp. 720 (E.D.N.Y.1976); *Lowe v. Trans World Airlines, Inc.,* 396 F.Supp. 9 (S.D.N. Y.1975); *Application of State of New York,* 362 F.Supp. 922 (S.D.N.Y.1973); *see also,* 1A J. Moore, *Moore's Federal Practice,* par. 0.160[4], at 237–38 (2d ed. 1983); 14 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3722, at 1983 Supp. p. 199–200 (1976 & Supp.1983).

**9.** For a listing of such cases *see, e.g., First National Bank of Aberdeen v. Aberdeen National Bank, supra,* 627 F.2d at 850 (collecting cases); *La Freniere v. General Electric Co.,* 572 F.Supp. 857, 860 (N.D.N.Y.1983) (collecting cases); *Sarnelli v. Tickle,* 556 F.Supp. 557, 560 n. 6 (E.D.N. Y.1983) (collecting cases).

Kerr-McGee petitioned the District Court to remove the action from State to Federal Court on the ground that the complaint raised a Federal question. Illinois thereafter moved to remand the action to State Court, arguing that it pleaded no Federal cause of action. The District Court denied Illinois' motion, finding that the Federal regulatory scheme under the AEA had preempted state regulation of radioactive waste disposal, and that interpretation of Federal law was thus necessarily involved in the complaint. Subsequently, the District Court granted Kerr-McGee's motion to dismiss the complaint, "finding that Federal law conferred exclusive jurisdiction upon the NRC to regulate radiation hazards and, therefore, preempted state and local legislative and administrative regulatory schemes." 677 F.2d at 574.

On appeal, the Court of Appeals stated that Illinois' complaint relied only on alleged violations of *state* law and regulations, and therefore raised no Federal cause of action. *Id.* at 576–77. As to Kerr-McGee's argument based on Federal preemption of State law, the Court stated that: "We do not agree.... that a defendant can have a state law claim removed to federal court merely by uttering the word preemption." *Id.* at 577. The Court saw no reason for treating a defense of Federal preemption differently than any other defense based on Federal law. *Id.* at 578. Consequently, the Court reversed the District Court's order denying Illinois' motion to remand and remanded the action to the District Court with instructions to remand it to State Court. *Id.* In addition, it noted that since the action was improvidently removed from State to Federal Court, the District Court's consideration of the issue of preemption was improper. *Id.* at 578 n. 12.

Similarly, in *County of Suffolk v. Long Island Lighting Co., supra,* 549 F.Supp. 1250, a case which LILCO places great reliance on, the County brought suit on behalf of itself and all similarly situated LILCO ratepayers claiming that Shoreham suffered from serious deficiencies in design and construction and that ratepayers had been wrongfully overcharged to finance the escalated construction costs. *Id.* at 1252. More importantly, the complaint contained many references to defendants' violations of and/or non-compliance with NRC regulations governing the construction of Shoreham. *See id.* at 1253–54 & n. 5. Plaintiff pled actions sounding in negligence, strict liability, breach of warranty, breach of contract and misrepresentation and concealment. *Id.* After the action was removed to Federal Court, the County moved to remand.

Judge Bartels, with characteristic sound reasoning, denied the motion. After a general discussion of the law, he noted that *plaintiffs' complaint* relied on defendants' violation of the AEA and NRC regulations. Thus, a Federal question appeared on the face of plaintiffs' complaint and was an essential element in establishing its right to relief. *Id.* at 1256.

Having denied the County's motion, in dictum Judge Bartels noted that the parties had devoted much effort to the issue of preemption. Therefore, while unnecessary to his decision, he nevertheless turned to an examination of the issue. After analyzing several cases, including the decision in *Illinois v. Kerr-McGee Chemical Corp., supra,* Judge Bartels theorized that removal was proper where Federal law not only preempted, but also provided relief, whereas in cases where preemption served only as a defense and the complaint set forth no claim upon which Federal relief could be granted, removal was inappropriate. Applying that principle to the case before him, Judge Bartels found that "it is readily apparent that the [AEA], as presently construed by the Courts, does not establish a preemptive remedial scheme ... that would potentially accrue to the benefit of this plaintiff for jurisdictional purposes." *Id.* at 1258. Thus, while Judge Bartels denied the motion to remand, he rejected defendants' jurisdictional argument based on AEA preemption of plaintiffs' claims.

■ Applying the foregoing principles to the cases at hand, we are forced to con-

clude that the plaintiffs' actions do not arise under Federal law and were improvidently removed to this Court. Plaintiffs seek a declaration, pursuant to New York's Civil Practice Law and Rules, that certain parts of LILCO's Transition Plan are illegal under *state law*. The complaint does not mention or rely on defendants' failure to comply with, or its violation of, any Federal statutes or regulations. *Cf., County of Suffolk v. Long Island Lighting Co., supra,* 549 F.Supp. at 1256–57. Indeed, in pointing to the existence of a justifiable controversy, the complaint cites LILCO's Transition Plan's statement that *New York State law* does not prohibit LILCO from performing the necessary functions to protect the public. Instead, Federal law arises only by way of defendants' assertion that the AEA preempts plaintiffs' causes of action. As the cases, in our opinion, make clear, where no Federal claim can be found on the face of plaintiffs' complaint and Federal law is not an essential element in establishing its right to relief, a defense of Federal preemption cannot serve as a basis for Federal jurisdiction. Here, a Federal claim cannot be found on the face of the plaintiffs' complaints, and Federal Law is certainly not an essential element in establishing their right to relief. In fact, under prevailing law, they could not seek relief in this Court under the AEA or its implementing regulations. Of course, we do not suggest that the fact that plaintiffs could not have originally commenced this action in this Court under the AEA, which law defendants claim preempts plaintiffs' state law claims, necessarily bars removal of their actions to the Federal Court. So long as a Federal question appears on the face of plaintiffs' complaint and Federal law is an essential element in establishing their right to relief, removal would be proper. Such, however, is not the case here.

Recognizing, as it must, the force of the Supreme Court's decision in *Franchise Tax Bd., supra,* LILCO advances arguments along several fronts in seeking to persuade us that jurisdiction in this case rests on more than just its assertion of a Federal preemption defense.

First it argues that Federal law is the necessary source of plaintiffs' cause of action and, second, that even if State law is the source of the cause of action, it nonetheless requires resolution of a substantial question of Federal law in dispute between the parties. *See* LILCO Memorandum of Law in Opposition to Motion for Remand at 13, 13–26, *citing Franchise Tax Bd., supra,* 463 U.S. at ——, 103 S.Ct. at 2848. In support, it argues that Federal law is the source of plaintiffs' cause of action since "[t]he entire field of radiological health and safety, as it relates to the construction and operation of a nuclear power plant, is preempted by the Federal Atomic Energy Act." LILCO memo at 15, *citing, Pacific Gas & Electric Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). "Thus, any claim that Suffolk County may have to prevent the operation of Shoreham for reasons of radiological health and safety depends upon Federal law." LILCO memo at 20.

LILCO's argument is simply incorrect as a matter of law. *Plaintiff's complaint* specifically asserts a claim under New York's Declaratory Judgment Act, N.Y.Civ. Prac.Law § 3001 (McKinney 1974), and relies upon alleged violations of New York State law. Whatever may be its "source" in the broad sense of the word, "the 'law that creates the cause of action' is state law, and original jurisdiction is unavailable unless it appears that some substantial disputed question of Federal law is a necessary element of one of the well-pleaded state claims...." *Franchise Tax Bd., supra,* 463 U.S. at ——, 103 S.Ct. at 2848.

We must proceed then to the second prong of LILCO's argument, namely that a substantial disputed question of Federal law is a necessary element of plaintiffs' State law claims. Here, LILCO argues that the County's complaint, which alleges that in the event of a nuclear accident LILCO will perform certain public safety functions which are possessed inherently

by local and State government officials for exercise through the police power, assumes that LILCO would have obtained a Federal operating license from the NRC. "In that context," LILCO's argument continues, "to decide whether LILCO's conduct would be legal, one would first have to determine whether LILCO had the authority under Federal law to perform those functions necessary to protect the public health and safety in the event of a radiological emergency at Shoreham." LILCO memo at 21. Having posed the question, LILCO next answers it by stating that NRC regulations require it, as licensee, to perform the safety protective actions alluded to in paragraph 17 of the County's complaint. *Id.* at 25, *citing* NRC regulations. "Thus," LILCO's argument concludes, "Suffolk County's claim that LILCO lacks legal authority to proceed with the Transition Plan depends on the proposition that, under Federal law, states and localities have the exclusive authority to protect the public health and safety in the event of a radiological emergency at a nuclear power plant." LILCO memo at 26.

Again, we must disagree with LILCO. Initially, just as a defense of Federal preemption may not serve as a basis for "arising under" jurisdiction, so may it not serve as the substantial disputed question of Federal law which is the necessary element of plaintiffs' state law claims. Under LILCO's reasoning, which while not necessarily illogical is, nevertheless, not in accordance with the current state of the law, every case where a defense of Federal preemption is raised would satisfy the "substantial disputed Federal question" requirement, rendering illusory the prohibition of basing Federal jurisdiction on a preemption defense. More specifically, LILCO's argument is based not on plaintiffs' claim that State law would be violated by LILCO's performance of certain safety functions, but on LILCO's claim that NRC regulations *require it* to perform these safety measures. LILCO's argument, however appealing, is in practical terms no more than a claim of a defense of Federal preemption. If the Court were to follow this argument, we would have to close our eyes to the present state of the law.

LILCO makes one final argument in support of removal. It contends that the AEA has "completely displaced state regulation of the health and safety aspects of nuclear power plant operation" and that the AEA, therefore, "completely preempts any cause of action by Suffolk County under New York law." LILCO memo of law at 26, 30. *See, Franchise Tax Bd., supra,* 463 U.S. at ——, 103 S.Ct. at 2853–54; *Avco Corp. v. Avco Lodge No. 735, Int'l Assn. of Machinists,* 376 F.2d 337, 339–40 (6th Cir. 1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). LILCO relies on the Supreme Court's statement in *Franchise Tax Bd., supra,* that "[i]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." 463 U.S. at ——, 103 S.Ct. at 2854.

■ The "complete preemption" exception to the general rule that a defense of federal preemption may not serve as a basis for federal jurisdiction, however broad, is only applicable to those situations where the federal law that completely preempts plaintiff's state law action also provides a federal cause of action. Otherwise the federal preemption claim is merely a defense, albeit a complete one, to a state law cause of action and under well-settled law not a sound basis for federal jurisdiction. Thus, "complete preemption," in the jurisdictional sense, connotes not only displacement of state law in a given area, but also the availability of a federal right of action in its stead.

In the instant actions, the AEA does not supply the plaintiffs with a federal cause of action to replace their allegedly preempted state law claims. *See* 42 U.S.C. § 2271(c); *see, e.g., County of Suffolk v. Long Island Lighting Co., supra,* 728 F.2d at 59; *Simmons v. Arkansas Power & Light Co.,* 655 F.2d 131, 134 (8th Cir.1981); *Liesen v. Louisiana Power & Light Co.,* 636 F.2d 94, 95 (5th Cir.1981); *Susquehanna Valley Alli-*

*ance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 237–39 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981).

 Thus, we do not believe that *Avco* supports removal jurisdiction under the circumstances of this case. *See Franchise Tax Bd., supra,* 463 U.S. at —, 103 S.Ct. at 2855; *see generally,* 14 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3722, at Supp. 1983, p. 199–200 (1976 & Supp. 1983).[10]

### III.

Our decision today far from ends the present lawsuits or controversy. It is likely that this matter will move speedily to resolution in State Court where LILCO may, of course, raise its defense of Federal preemption. While State Court judges are not asked to apply Federal law everyday, it is a task well within their capabilities. Indeed, we are confident they will do so with the same open mind and sense of responsibility with which this Court addresses so-called diversity cases which ask us to apply the law of the states. Further, if the State Court rejects a defense of Federal preemption, that decision may ultimately be reviewed on appeal by the United States Supreme Court. *See, Franchise Tax Bd., supra,* 463 U.S. at —, 103 S.Ct. at 2848 n. 12.

### IV.

In light of the above discussion, LILCO's motion to consolidate the cases at bar with the Citizens' action is denied, since Rule 42(a), Fed.R.Civ.P., authorizes consolidation only of cases "pending before the court."

10. LILCO also argues that in the context of declaratory relief, "the courts look to the nature of the threatened conduct or action to determine whether the complaint raises a Federal question," and that "[i]f the threatened action is inevitably Federal in nature, then Federal jurisdiction exists." LILCO memo of law at 12 n. 2. To the extent that LILCO asserts by this argument that removal jurisdiction is broader in the case of state declaratory judgment actions, we reject this argument. Moreover, the threatened conduct or action in this case is LILCO's alleged violation of *state law* by implementing a Transi-

*See, Oregon Egg Producers v. Andrew,* 458 F.2d 382 (9th Cir.1972); *Spirt v. Teachers Ins. and Annuity Ass'n,* 93 F.R.D. 627 (S.D.N.Y.1982); *Senco of Florida, Inc. v. Clark,* 473 F.Supp. 902 (M.D.Fla.1979); *Appalachian Power Co. v. Region Properties, Inc.,* 364 F.Supp. 1273 (W.D.Va.1973); *Facen v. Royal Rotterdam Lloyd S.S. Co.,* 12 F.R.D. 443 (S.D.N.Y.1952).

### CONCLUSION

Plaintiffs' motions to remand the within actions to State Court are granted. Defendants' motion to consolidate is denied.

SO ORDERED.

tion Plan which, whether consistent or not with Federal law, is claimed to violate State law.

Finally, it claims that if remand is granted, duplicative litigation will take place in State and Federal Court. However, the fact that both the resources of the State and Federal Courts, and the parties to the actions, will not be well served is not a persuasive ground for removal. Unfortunately, one side effect of strict application of the well-pleaded complaint doctrine may be a bad result. In addition, the Citizens' action and the cases at bar simply do not raise identical issues.